Desarrolladora Caribe, S.E., peticionaria, *v.* Ven-Lour Enterprises, Inc. et als., Antonio San Miguel Santos, Omayda Othet Hernández Santiago y la Sociedad Legal de Gananciales compuesta por ambos, recurridos.

*Número:* CC-2015-0428 *Resuelto:* 5 de junio de 2017

*Sonia S. Sierra Sepúlveda,* de *Bufete Barnés Rosich, C.S.P.,* abogada de la parte peticionaria; *Félix A. Vilanueva Cruz,* abogado de Antonio San Miguel Santos, Omayda Othet Hernández Santiago y la Sociedad Legal de Gananciales compuesta por ambos, parte recurrida.

LA JUEZ ASOCIADA SEÑORA RODRÍGUEZ RODRÍGUEZ emitió la opinión del Tribunal.

En esta ocasión nos corresponde determinar si es necesario el consentimiento de un *hipotecante* que no suscribió un pagaré hipotecario para otorgar el pagaré como garantía mobiliaria de una transacción posterior.

I

A

Los hechos del presente caso, que no están en controversia, se remontan al 1998, cuando los esposos José Miguel Ventura Asilis y Josefina Abreu Cisneros (matrimonio Ventura-Abreu o los Ventura-Abreu), en conjunto con los esposos Juan Antonio San Miguel y Omayda Othet Hernández

Santiago (matrimonio San Miguel-Hernández o los San Miguel-Hernández), otorgaron la escritura de hipoteca número 33 el 1 de diciembre de 1998 ante el notario Carmelo Campos Cruz. La hipoteca se constituyó sobre una finca que radica en los municipios de Ciales y Morovis, poseída en común proindiviso por los dos matrimonios. El matrimonio Ventura-Abreu era propietario en 2/3 partes, mientras que el matrimonio San Miguel-Hernández era propietario de la restante tercera parte de la propiedad.

De la escritura otorgada por los dos matrimonios surge que ésta se constituyó en garantía de un pagaré, pagadero a la presentación, a Doral Bank *o a su orden*, por $1,088,750, bajo el Afidávit Núm. 498 otorgado ante el notario Carmelo Campos Cruz (el pagaré). El pagaré en controversia fue emitido y suscrito por el matrimonio Ventura-Abreu; el matrimonio San Miguel-Hernández no formó parte de éste. El 21 de julio de 2004, Doral endosó el pagaré de vuelta al matrimonio Ventura-Abreu.

Así las cosas, el 16 de marzo de 2005, el matrimonio Ventura-Abreu, mediante el Sr. Alfredo Cintrón Cintrón, mandatario debidamente apoderado del matrimonio, suscribió un acuerdo (Acuerdo) con Desarrolladora Caribe, S.E. (Desarrolladora Caribe) para complementar otro acuerdo pactado el 28 de enero de 2005 entre Ven-Lour Enterprises, Inc. (Ven-Lour) y Desarrolladora Caribe. En el Acuerdo, Desarrolladora Caribe acordó efectuar ciertos préstamos y adelantos a Ven-Lour, para que este último pudiera desarrollar un proyecto de urbanización. Por su parte, los esposos del matrimonio Ventura-Abreu se obligaron solidariamente en su carácter personal al pago de las cantidades adeudadas por Ven-Lour a Desarrolladora Caribe, hasta la suma de $650,000.

Para garantizar la obligación del matrimonio Ventura-Abreu en el Acuerdo, el señor Cintrón Cintrón suscribió un contrato de garantía y prenda titulado *Mortgage Note Pledge and Security Agreement.* Como parte del contrato de

garantía y prenda, el señor Cintrón Cintrón entregó a Desarrolladora Caribe el pagaré que Doral Bank había endosado a favor de los esposos del matrimonio Ventura-Abreu el 21 de julio de 2004 y cedió a Desarrolladora Caribe el derecho de ejecutar los bienes que gravaba el pagaré para satisfacer su acreencia de surgir un evento de impago.

Pasados los años, Desarrolladora Caribe adelantó ciertas sumas de dinero e incurrió en varios gastos relacionados con las obligaciones de Ven-Lour según los acuerdos referidos. Luego de un proceso de negociación, Ven-Lour y Desarrolladora Caribe acordaron fijar la cantidad adeudada en $300,000, devengando intereses desde el 9 de junio de 2008 hasta el saldo de la deuda.

## B

Posteriormente, el 6 de noviembre de 2008, Desarrolladora Caribe presentó una demanda en el Tribunal de Primera Instancia sobre cobro de dinero y ejecución de prenda e hipoteca por la vía ordinaria contra Ven-Lour y el matrimonio Ventura-Abreu. El 24 de abril de 2012, el foro de instancia notificó una Sentencia en la cual condenó a las partes demandadas a pagar solidariamente $286,357.90 a Desarrolladora Caribe, tomando en cuenta un abono hecho al principal de la deuda por Ven-Lour e intereses devengados. Asimismo, el tribunal ordenó la ejecución de la prenda y la hipoteca dada en garantía.

Unos meses después, el 4 de octubre de 2012, Desarrolladora Caribe presentó una demanda enmendada para incluir al matrimonio San Miguel-Hernández. Ello puesto que, como dueños registrales de la finca hipotecada, era necesario demandar al matrimonio San Miguel-Hernández acorde el procedimiento de ejecución de hipoteca en cumplimiento según el Artículo 181.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, Reglamento Núm. 2674 de 9 de julio de 1980,

según enmendado (Reglamento Hipotecario). En atención a ello, el 18 de octubre de 2012, el foro de instancia notificó una Sentencia Parcial en la cual permitió la enmienda a la demanda y, como ya había resuelto, condenó a Ven-Lour y al matrimonio Ventura-Abreu al pago de $286,357.90. Además, autorizó a Desarrolladora Caribe a emplazar y notificar al matrimonio San Miguel-Hernández acorde con el Reglamento Hipotecario, quedando pendiente entonces la ejecución de la prenda y la hipoteca.

Ya notificados todos los titulares registrales del inmueble objeto de demanda, el 2 de mayo de 2013 Desarrolladora Caribe presentó una solicitud de sentencia sumaria para que el tribunal ordenara la ejecución de la prenda y la hipoteca. A ésta se opuso el matrimonio San Miguel-Hernández. Dada la naturaleza accesoria de la hipoteca constituida en garantía del pagaré, el matrimonio San Miguel-Hernández adujo que ésta se extinguió cuando el matrimonio Ventura-Abreu saldó el préstamo con Doral, a saber, el 21 de julio de 2004. En atención a ello y a que el matrimonio San Miguel-Hernández no consintió los posteriores negocios del matrimonio Ventura-Abreu, Ven-Lour y Desarrolladora Caribe, éste alegó que el contrato de prenda no era válido, pues era necesario el consentimiento de todos los condueños para dar en garantía la propiedad.

Recibidos los argumentos de las partes, el Tribunal de Primera Instancia notificó una Sentencia el 20 de junio de 2014 en la cual declaró "ha lugar" la solicitud de sentencia sumaria presentada por Desarrolladora Caribe. Ordenó, entre otras cosas, que se vendiera en subasta pública la finca cuya hipoteca garantizó el pagaré pignorado si no se efectuaba el pago de la suma adeudada.

Inconforme, el matrimonio San Miguel-Hernández acudió en revisión al Tribunal de Apelaciones. Mediante una resolución notificada el 13 de noviembre de 2014, el foro apelativo intermedio revocó al Tribunal de Primera Instancia. Éste razonó que, dado que el pagaré hipotecario

pignorado se garantizó con un bien inmueble que no le pertenecía exclusivamente a sus deudores pignoraticios, el contrato de prenda era nulo. Adicionalmente, indicó que si fuera a sostener la validez del contrato de prenda, éste no podría surtir efecto con relación al matrimonio San Miguel-Hernández, puesto que el contrato de prenda en cuestión fue suscrito en un documento privado no autenticado por notario. Por su parte, una de las jueces que conformaba el panel —la jueza Domínguez Irizarry— disintió del criterio de la mayoría. Ésta sostuvo que Desarrolladora Caribe era tenedora de un instrumento negociable que cobijaba una obligación hipotecaria válida y que, por lo tanto, tenía facultad para exigir la ejecución de la hipoteca.

Oportunamente, Desarrolladora Caribe acudió ante este Foro mediante una solicitud de *certiorari* y presentó varios señalamientos de error. Arguyó lo siguiente: (1) erró el Tribunal de Apelaciones al interpretar el derecho sobre instrumentos negociables y el derecho hipotecario; (2) erró dicho tribunal al aplicar erróneamente las disposiciones del Código Civil sobre la prenda, y (3) erró asimismo el tribunal apelativo al ignorar que el matrimonio San Miguel-Hernández no se opuso adecuadamente a la solicitud de sentencia sumaria presentada por Desarrolladora Caribe. El 30 de octubre de 2015, examinada la petición de *certiorari*, expedimos el auto. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

II

A

i

Los instrumentos negociables son documentos de crédito que incorporan el derecho a cobrar una suma de dinero, a los cuales el derecho cambiario les confiere una facilidad de circulación especial. *Cruz Consulting v. El Legado et al.*, 191 DPR 499, 509–510 (2014), citando a M.R.

Garay Aubán, *Derecho cambiario de Estados Unidos y Puerto Rico*, Ponce, Ed. Rev. Der. Pur., 1999, pág. 1. Se caracterizan por su idoneidad para el tráfico comercial. Desde el origen de la letra de cambio hasta el pagaré moderno, el valor de los instrumentos negociables yace en su liquidez, que se debe a que el comprador de un instrumento negociable solamente necesita verificar el contenido del instrumento mismo para cerciorar la autoridad del vendedor para transferirlo sin tener que preocuparse por restricciones u obligaciones exógenas. Consecuentemente, de ordinario un comprador de un instrumento negociable no enfrentaría problema alguno si quisiera intercambiarlo por dinero en efectivo. E. Renuart, *Uneasy Intersections: The Right to Foreclose and the U.C.C.*, 48 Wake Forest L. Rev. 1205, 1215 (2013). En vista de lo anterior, la negociabilidad es la característica medular de los instrumentos negociables y la fuente de su importancia para nuestras relaciones económicas.

 Nuestra Ley de Transacciones Comerciales define "instrumento negociable" como una promesa u orden incondicional de pago de una cantidad específica de dinero si: (1) es pagadero al portador o a la orden al momento de su emisión; (2) es pagadero a la presentación o en una fecha específica, y (3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero. Sec. 2-104 de la Ley de Transacciones Comerciales (LTC), Ley Núm. 208 de 17 de agosto de 1995, según enmendada, 19 LPRA sec. 504. Véase *COSSEC et al. v. González López et al.*, 179 DPR 793, 803 (2010). Acorde con el tercer requisito, un pagaré que evidencie una promesa incondicional de pago debe ser como un "mensajero sin bagaje" para que se considere negociable. *Overton v. Tyler et al.*, 3 Pa. 346, 347 (1846). No obstante, la promesa de pago puede contener un compromiso adicional de dar colateral para garantizar el pago sin que esto afecte la negociabilidad del instrumento. 19 LPRA

sec. 504(a)(3)(A). Por lo tanto, un pagaré garantizado por una hipoteca puede ser un instrumento negociable porque el compromiso de ofrecer como colateral la hipoteca para garantizar el pago no afecta su negociabilidad.[1]

■ Un instrumento puede ser negociado de tenedor a tenedor sucesivamente.[2] Incluso, la negociación del instrumento puede resultar en una readquisición por parte de un tenedor anterior o por el emisor, quien luego podría proceder a negociarlo. 19 LPRA sec. 557. Dada la naturaleza del instrumento negociable, "[e]l hecho de que el deudor [...] y el acreedor sean momentáneamente la misma persona, no activa automáticamente la institución de la confusión como causa de extinción de la obligación". (Énfasis suprimido). M.R. Garay Aubán, *Derecho cambiario*, Ponce, Ed. Rev. Der. Pur., 1999, pág. 179. Como ya habíamos resuelto bajo la Ley de Instrumentos Negociables, reiteramos que "el pagaré no pierde su negociabilidad por un episodio temporero de confusión de derechos. Puesto en circulación nuevamente por el deudor [...] con su reingreso al cauce de corriente crediticia, el pagaré recuper[a] toda su validez y su valor de garantía de la obligación asegurada". *Calo Rivera v. Reyes*, 115 DPR 123, 127 (1984).

■ Asimismo, la hipoteca que garantiza el pagaré no se extingue con la readquisición de este último si el pagaré no se cancela. Al contrario, en ausencia de la cancelación del pagaré que garantiza, la extinción de la hipoteca está

---

[1] Véase M.R. Garay Aubán, *Derecho cambiario*, Ponce, Ed. Rev. Der. Pur., 1999, págs. 85–86, donde el tratadista usa el pagaré hipotecario como ejemplo de un instrumento negociable con un compromiso adicional de dar colateral en garantía de la promesa de pago.

[2] Para negociar un instrumento pagadero a la orden de una persona identificada, se requerirá la cesión de la posesión del instrumento y el endoso por el tenedor presente a favor del cesionario. 19 LPRA sec. 551. La cesión de la posesión y el endoso son los *únicos* requisitos que impone la ley para la negociación de un instrumento negociable pagadero a la orden. Debido a que el único requisito para la negociación de un instrumento pagadero a la orden es la cesión de la posesión y su endoso por el tenedor, el pagaré hipotecario que cumpla con los requisitos de ser instrumento negociable se podrá negociar sin el consentimiento de los hipotecantes.

sujeta a los términos de prescripción para ejercitar la acción hipotecaria. La acción hipotecaria prescribe a los veinte años desde que vence el crédito garantizado si el pagaré tiene fecha cierta de vencimiento o a los veinte años desde que se inscribe la hipoteca en el Registro de la Propiedad si el pagaré es pagadero a la presentación. *Westernbank v. Registradora*, 174 DPR 779, 787–789 (2008).

ii

Cuando el tenedor de un pagaré hipotecario negocia el instrumento válidamente, la hipoteca queda automáticamente transferida al nuevo tenedor. Esto responde al principio en el derecho cambiario —vigente desde el siglo XIX— que establece que *la hipoteca persigue al pagaré*. *Carpenter v. Longan*, 83 US 271, 275–276 (1872) ("The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter. [...] *Accessorium non ducit, sequitur principale*"). Lo accesorio no conduce, sino que persigue al principal. Esta lógica encuentra arraigo en nuestra jurisdicción.

La hipoteca es " 'un derecho real [...] sobre los inmuebles del deudor o de un tercero, en virtud de cuyo derecho [...] el acreedor adquiere la facultad de perseguir[los] [...] a fin de ser pagado con el precio de [los] mism[os] [...]". *Liechty v. Descartes Saurí*, 109 DPR 496, 501 (1980), citando a F. Puig Peña, *Compendio de Derecho Civil*, (ed. 1972) Vol. II, pág. 623. Ésta es una obligación inherentemente accesoria, puesto que se constituye para asegurar el cumplimiento de una obligación principal, ya sea del hipotecante *o de un tercero*. Art. 1756 del Código Civil de Puerto Rico, 31 LPRA sec. 5001.

La hipoteca persigue al pagaré precisamente porque no se concibe una hipoteca sin la obligación principal que ésta garantice. *Liechty*, supra, pág. 502. Nuestro derecho registral inmobiliario recoge este principio concisamente al establecer que "[c]uando la hipoteca se hubiere

constituido para garantizar títulos transferibles por endoso o al portador, *el derecho hipotecario se entenderá transferido [...] sin necesidad de dar de ello conocimiento al deudor*, ni de hacerse constar la transferencia en el Registro". (Énfasis suplido). Art. 195 de la Ley Hipotecaria y del Registro de la Propiedad de 1979 (Ley Hipotecaria de 1979), Ley Núm. 143 de 14 de junio de 1980, según enmendada, 30 LPRA sec. 2614 (ed. 2005).([3])

## B

### i

■ Un tenedor de un instrumento negociable —acreedor en una relación crediticia— podría, a su vez, ofrecer ese instrumento como una garantía de otra transacción en la cual él se desempeña como deudor. Esto se conoce como una "transacción garantizada", donde el instrumento funge como la garantía mobiliaria.

El marco jurídico de las garantías mobiliarias en Puerto Rico cambió drásticamente tras la implementación del Artículo 9 del Uniform Commercial Code como el "Capítulo 9—Transacciones Garantizadas" de la LTC en el 1996. Ley Núm. 208 de 17 de agosto de 1995, añadido por la Ley Núm. 241 de 19 de septiembre de 1996, según enmendada.([4]) La ley que implementó este régimen uniforme para atender las garantías sobre propiedad mueble derogó múltiples leyes anteriores que atendían, cada una

---

([3]) Al momento de los hechos de este caso aplicaba la Ley Hipotecaria y del Registro de la Propiedad de 1979. No obstante, este artículo es idéntico en la nueva Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Art. 91 de la Ley Núm. 210 de 8 de diciembre de 2015, según enmendada, 30 LPRA sec. 6118.

([4]) Aunque el Artículo 9 ha sido remplazado por el Artículo 9 Revisado del Uniform Commercial Code —legislado en nuestra jurisdicción a través de la Ley Núm. 21 de 17 de enero de 2012, 19 LPRA secs. 2211-2409, y efectivo un año después de su aprobación—, el derecho de transacciones garantizadas en el presente caso se rige por el antiguo Artículo 9 de la Ley Núm. 208 de 17 de agosto de 1995 (1995 [Parte 1] Leyes de Puerto Rico 1012), según enmendada, puesto que la transacción concernida tuvo lugar previo a la vigencia del Artículo 9 Revisado en Puerto Rico.

dentro de su temática particular, el mismo asunto.([5]) Singularmente, de los antiguos modos de constituir una garantía mobiliaria sobrevivió la prenda instituida en el Código Civil. 31 LPRA secs. 5001–5031.

■ Una garantía mobiliaria, acorde con la Sec. 9-203 del Capítulo 9—Transaccciones Garantizadas (Capítulo 9), requiere tres elementos para su constitución: (1) que se haya dado valor a cambio; (2) que el deudor tenga derechos sobre la propiedad gravada,([6]) y (3) que se cumpla con una de tres posibles condiciones:

a. Que la propiedad gravada esté en posesión del acreedor garantizado en conformidad con un acuerdo.

b. Que la propiedad gravada sea inversiones y el acreedor garantizado tenga el control a tenor de un acuerdo.

c. Que el deudor haya firmado un acuerdo de constitución de gravamen mobiliario que contenga una descripción de la propiedad gravada. Sec. 9-203 de la Ley 208-1995, añadida por la Ley 241-1996 (1996 [Parte 2] Leyes de Puerto Rico 1422).

■ El Capítulo 9, a su vez, provee para que la posesión en ciertos casos también perfeccione el gravamen mobiliario y así surta efectos frente a terceros. Específica-

---

([5]) A modo de ejemplo, entre las leyes derogadas por la Ley Núm. 241 que adoptó el Artículo 9 del Uniform Commercial Code se encuentran: la Ley Hipotecaria de Propiedad Mueble, Ley Núm. 19 de 3 de junio de 1927, según enmendada; la ley sobre ventas condicionales, Ley Núm. 61 de 13 de abril de 1916, según enmendada; la Ley de Contratos de Refacción Industrial y Comercial, Ley Núm. 86 de 24 de junio de 1954, según enmendada, y la Ley de Cesión de Cuentas por Cobrar, Ley Núm. 8 de 8 de octubre de 1954, según enmendada, entre otras. Véase 1996 (Parte 2) Leyes de Puerto Rico 1326.

([6]) Si bien la sección parece implicar que es necesario que el deudor de la obligación principal sea quien tenga derechos sobre la propiedad gravada, el Artículo 9 no impide que terceros ofrezcan en garantía mobiliaria su propiedad para garantizar la obligación principal de otra persona. La definición de "deudor" en el Capítulo 9—Transacciones Garantizadas (Capítulo 9) establece que "[c]uando el deudor y el dueño de la propiedad gravada no sean la misma persona, el término 'deudor' significa el dueño de la propiedad gravada bajo toda disposición de este Capítulo relacionada con la propiedad gravada, el obligado bajo toda disposición relacionada con la obligación y podrá incluir a ambos cuando el contexto así lo requiera [...]". Sec. 9-105 de la Ley 208-1995, añadida por la Ley 241-1996 (1996 [Parte 2] Leyes de Puerto Rico 1411).

mente, un gravamen mobiliario sobre un instrumento negociable se perfeccionará mediante la toma de posesión de la propiedad gravada por el acreedor garantizado. Sec. 9-305 de la Ley 208-1995, añadido por la Ley 241-1996 (1996 [Parte 2] Leyes de Puerto Rico 1430). Por lo tanto, un instrumento negociable cuya posesión se otorga a un acreedor garantizado en conformidad con un acuerdo constituye una garantía mobiliaria exigible que surte efectos contra terceros.

La posesión de la propiedad gravada como una de las posibilidades para la constitución del gravamen mobiliario no es más que la codificación en el Capítulo 9 de la antigua figura de la prenda. Por ende, ya que la figura de la prenda civilista no fue derogada, se torna necesario —para fines de resolver el presente caso— determinar su alcance dentro del marco jurídico puertorriqueño en relación con las garantías mobiliarias sobre instrumentos que se constituyen mediante posesión.

ii

▪ De ordinario, el Código Civil es supletorio en las materias que se rigen por leyes especiales. Art. 12 del Código Civil de Puerto Rico, 31 LPRA sec. 12; *Berrocales v. Tribunal Superior*, 102 DPR 224, 226 (1974). Sin embargo, la Sección 9-102 del Capítulo 9 establece claramente que "[l]as disposiciones del Código Civil de Puerto Rico respecto a la prenda [...] no aplicarán a las transacciones regidas por esta Ley". Ley Núm. 241-1996 (1996 [Parte 2] Leyes de Puerto Rico 1404).(⁷) A tenor de esta disposición, para determinar el campo de aplicación de la prenda civilista es menester entonces auscultar qué transacciones garantizadas se rigen por el Capítulo 9.

---

(⁷) El Artículo 9 Revisado del Uniform Commercial Code, que entró en vigor en nuestra jurisdicción como el nuevo Capítulo 9 de la Ley de Transacciones Comerciales (LTC) el 17 de enero de 2013, tiene una disposición idéntica. Sec. 9-109 de la Ley 208-1995, añadida por la Ley Núm. 21 de 17 de enero de 2012, ley enmendadora efectiva un año después de su aprobación y codificada en 19 LPRA sec. 2219(e).

Sobre el particular, la referida Sección 9-102 nos indica que el Capítulo 9 aplicará a "toda transacción *(independientemente de su forma)* que tenga el propósito de crear un gravamen mobiliario sobre propiedad mueble o inmuebles por su destino incluyendo bienes, documentos, *instrumentos*, bienes incorporales, papel financiero o cuentas [...]". (Énfasis suplido).[8] Sec. 9-102 de la Ley 208-1995, añadida por la Ley 241-1996 (1996 [Parte 2] Leyes de Puerto Rico 1404). Incluso, la sección indica específicamente que "[e]ste Capítulo aplicará a gravámenes mobiliarios creados por contrato incluyendo los de prenda [...]". Íd.

Claro está, si bien la aplicación del Capítulo 9 y la subsiguiente exclusión de las disposiciones de la prenda civilista operan automáticamente, no por ello operan obligatoriamente. Máxime, entre las cualidades de la LTC es su flexibilidad. Por dicha razón, la Sección 1-102 de la LTC permite a los contratantes variar el efecto de las disposiciones de esta ley mediante acuerdo. 19 LPRA sec. 401. Consecuentemente, las partes podrían pactar la aplicación de las disposiciones de la prenda del Código Civil de manera supletoria o, inclusive, de manera exclusiva del Capítulo 9 de la LTC. Ahora bien, ausente un acuerdo entre las partes sobre el particular, cuando aplique el Capítulo 9 sobre garantías mobiliarias, éste excluirá la aplicación de las disposiciones sobre la prenda estatuidas en el Código Civil.

La figura de la prenda civilista es, en maneras diversas, más exigente para su constitución y efectividad contra terceros que la figura de la garantía mobiliaria constituida mediante posesión acorde con el Capítulo 9. De hecho, no es posible cumplir con los requisitos de la prenda

---

[8] En el Capítulo 9 se define "instrumento" como "un instrumento negociable (según definido en la Sección 2-104), o cualquier otro escrito que evidencie un derecho al pago de dinero, pero no sea de por sí un acuerdo de gravamen mobiliario o de arrendamiento y que sea de la clase que en el curso ordinario de los negocios se transfiere por la entrega y su endoso o cesión necesario. El término no incluye inversiones". Sec. 9-105(k) de la Ley 208-1995, añadida por la Ley 241-1996 (1996 [Parte 2] Leyes de Puerto Rico 1411).

civilista sin cumplir con los requisitos de la garantía mobiliaria del Capítulo 9.(⁹) Consecuentemente, *toda* garantía mobiliaria sobre un instrumento que cumpla con los requisitos de la prenda civilista cumplirá también con los requisitos para la constitución y exigibilidad del gravamen mobiliario acorde con el Capítulo 9. En vista de que la LTC *desplaza* la figura de la prenda civilista si la transacción se rige por sus disposiciones, el desenlace lógico de esta situación es que —bajo la normativa vigente de la LTC— *las disposiciones del Código Civil respecto a la prenda no pueden aplicarse a las garantías mobiliarias constituidas sobre instrumentos*, a menos que las partes hayan acordado expresamente su aplicación.(¹⁰)

---

(⁹) Ésta solamente permite la constitución de la prenda sobre bienes muebles susceptibles de posesión. Art. 1763 del Código Civil de Puerto Rico, 31 LPRA sec. 5022. Por otro lado, el Capítulo 9 de la LTC permite constituir garantías sobre cuentas y otros intangibles. Asimismo, en el contrato de prenda "es esencial la preexistencia de una obligación para que sea válida la garantía", mientras que la LTC "reconoce la efectividad de las garantías fundadas en obligaciones no prestadas". A.C. Gómez Pérez, *El conflicto entre tradiciones jurídicas en el derecho privado comercial puertorriqueño*, 3 UPR Bus. L.J. 29, 37 y 38 (2012). El contrato de prenda requiere que la cosa pignorada pertenezca en propiedad al que la empeña y que éste tenga libre disposición de la cosa. Por su parte, el Capítulo 9 de la LTC solamente requiere que el deudor tenga derechos sobre la propiedad gravada. Art. 1756 del Código Civil de Puerto Rico, 31 LPRA sec. 5001; Sec. 9-203 de la Ley 208-1995, añadida por la Ley 241-1996 (1996 [Parte 2] Leyes de Puerto Rico 1421). Para constituir el contrato de prenda civilista es esencial que se ponga en posesión de la cosa dada en prenda al acreedor o a un tercero de común acuerdo. Art. 1762 del Código Civil de Puerto Rico, 31 LPRA sec. 5021. Por el contrario, en la LTC, la posesión es solamente una de las múltiples maneras para constituir el gravamen mobiliario. Sec. 9-203 de la Ley 208-1995, añadida por la Ley 241-1996, *supra*. Por último, para que la prenda civilista surta efecto contra terceros, debe constar la certeza de la fecha mediante el documento auténtico, mientras que en la LTC la posesión es suficiente para que el gravamen mobiliario surta efectos contra terceros mediante su perfección. Art. 1764 del Código Civil de Puerto Rico, 31 LPRA sec. 5023; Sec. 9-304 de la Ley 208-1995, añadida por la Ley 241-1996 (1996 [Parte 2] Leyes de Puerto Rico 1428). Todas las disposiciones aquí mencionadas del Capítulo 9 de la LTC tienen disposiciones análogas idénticas o casi idénticas en el Capítulo 9 Revisado, introducido por la Ley Núm. 21 de 17 de enero de 2012, 19 LPRA secs. 2211-2409.

(¹⁰) Una situación análoga ocurrió en Luisiana —estado con una tradición civilista similar a la nuestra, de estirpe francesa— tras la aprobación del Artículo 9 del Uniform Commercial Code en esa jurisdicción. Véase M.H. Rubin, *Ruminations on the Louisiana Law of Pledge*, 75 La. L. Rev. 697, 700 (2015). En específico, el comentario oficial a una de las disposiciones sobre la prenda civilista de Luisiana indica que "[a]unque este artículo requiere entrega de la cosa en el caso de la prenda de un bien mueble corporal, puede que no existan bienes muebles corporales a los cuales aplique esta regla, puesto que el Artículo 9 del Uniform Commercial Code puede que

Resuelto que —salvo pacto en contrario— el derecho aplicable a una garantía mobiliaria sobre un instrumento en el caso de autos es el Artículo 9 del Uniform Commercial Code —legislado en nuestra jurisdicción como el antiguo Capítulo 9 de la LTC, que figuraba en 19 LPRA secs. 2001 a 2207—, excepto las disposiciones sobre la prenda incluidas en el Código Civil, es menester evaluar el efecto de suscribir una garantía sobre un instrumento que a su vez está garantizado por una hipoteca.

iii

La Sección 9-104 del Capítulo 9 dispone para que ciertas transacciones de garantía queden excluidas de la aplicación del Capítulo. Sec. 9-104 de la Ley 208-1995, añadida por la Ley 241-1996 (1996 [Parte 2] Leyes de Puerto Rico 1409). Entre éstas se encuentra "la creación o transmisión de un derecho real o gravamen sobre bienes inmuebles, incluyendo un arrendamiento de bienes inmuebles o las rentas producidas por el mismo [...]". Íd., pág. 1410. Empero, si bien esto excluye las transacciones sobre bienes inmuebles de la aplicación del Capítulo 9, el mero hecho de estar garantizado por una hipoteca no derrota el carácter mueble de un pagaré hipotecario. Recordemos que "[u]na obligación para el cobro de dinero, como lo es un pagaré transmisible por endoso o por la mera entrega del documento, es por disposición de la ley un bien mueble aun cuando esté garantizada con hipoteca sobre bienes inmuebles". *Dávila v. Registrador*, 59 DPR 130, 134 (1941). Véase Art. 268 del Código Civil de Puerto Rico, 31 LPRA sec. 1064.

Puntualmente, la Sección 9-102(3) del Capítulo 9 establece que "[l]a aplicabilidad de este Capítulo a un gravamen mobiliario no quedará afectada por el hecho de que

cubra todo bien mueble corporal sin excepción". (Traducción nuestra). LSA-C.C. Art. 3149 Comment (c) (Revision Comments—2014) (cabe señalar que, contrario a nuestra prenda civilista, la figura de la prenda del Código Civil de Luisiana permite dar en prenda bienes muebles incorporales no susceptibles de posesión).

la obligación principal esté a su vez garantizada por una transacción o un gravamen no sujeto a este Capítulo". Sec. 9-104 de la Ley 208-1995, añadida por la Ley 241-1996 (1996 [Parte 2] Leyes de Puerto Rico 1404). Por ello, el Capítulo 9 aplicará a una transacción garantizada por un pagaré aunque éste, a su vez, esté garantizado por una hipoteca cuya constitución se rija por la ley hipotecaria.[11]

iv

Establecido que un contrato de garantía sobre un pagaré hipotecario se rige por la normativa relativa a las garantías mobiliarias, específicamente por el Capítulo 9 de la LTC, la pregunta restante es si la garantía constituida sobre el pagaré hipotecario también se extiende a los derechos sobre la hipoteca. Consideramos que sí.

 Como ya discutimos con relación a la negociación de los pagarés hipotecarios que cumplan con los requisitos de "instrumento negociable" de acuerdo con la LTC, *la hipoteca persigue al pagaré*. Ello, pues como establece la ley y la jurisprudencia, la hipoteca es accesoria a la obligación principal que garantiza. Véanse: Art. 1756 del Código Civil de Puerto Rico, 31 LPRA sec. 5001; *Liechty*, supra, pág. 502; D.J. Whaley, *Mortgage Foreclosures, Promissory Notes, and the Uniform Commercial Code*, 3 W. St. U.L. Rev. 313, 326 (2012) ("The common law was clear that the mortgage contract and the mortgage deed are mere 'security' for the payment of the promissory note (the 'debt'). It is a common law maxim that 'security follows the debt' [...] The courts are more or less unanimous on this" [escolio

---

[11] El Artículo Capítulo 9 Revisado contiene una disposición análoga en su Sección 9-109(b), 19 LPRA sec. 2219(b). Véase, además, *Hawkland's Uniform Commercial Code Series* Sec. 9-104:11 (2001) ("A security interest in a secured obligation such as the pledge of a note that is itself secured by a real estate mortgage, is also a security interest in personal property"); *S.E.C. v. Elliot*, 953 F.2d 1560, 1580 (11mo Cir. 1992) ("It is apparent that the drafters of the U.C.C. intended for Article 9 to apply to the creation of a security interest in a note secured by real estate"); *O'Neil v. Carlson*, 608 A.2d 858, 860 (1992) ("Although the mortgage 'is itself secured by a transaction or interest to which this Article does not apply,' the *security interest* in the mortgage is well within the ambit of the article" [énfasis en el original]).

omitido]). Consecuentemente, un corolario lógico de la naturaleza accesoria de la hipoteca es que la transferencia o pignoración del pagaré que esté garantizado por la hipoteca también afectará el derecho subyacente a la hipoteca. Gregory Shaw en: Nota, *Security Interests in Notes and Mortgages: Determining the Applicable Law*, 79 Colum. L. Rev. 1414, 1428–1429 (1979) ("[G]iven the [Uniform Commercial] Code's intent to make [A]rticle 9 applicable to the security interest in the note, it follows that [A]rticle 9 must also apply to the security interest in the mortgage"). Incluso, como adelantamos en la primera parte de la opinión, la propia ley hipotecaria reconoce la transferencia automática del derecho de hipoteca cuando se transfiere el instrumento que ésta garantiza. Art. 195 de la Ley Hipotecaria y del Registro de la Propiedad de 1979, Ley Núm. 143 de 14 de junio de 1980, según enmendada, 30 LPRA sec. 2614 (ed. 2005). Por lo tanto, es forzoso concluir que la constitución de una garantía mobiliaria sobre un pagaré que a su vez está garantizado por un gravamen sobre propiedad inmueble, también incluye los derechos a ese gravamen sobre propiedad inmueble.([12])

## III

En el caso de autos, tanto el matrimonio San Miguel-Hernández como el matrimonio Ventura-Abreu otorgaron

---

([12]) Posteriormente, con la adopción en nuestra jurisdicción del Artículo 9 Revisado, se dispuso expresamente que "[l]a constitución de una garantía mobiliaria sobre el derecho al pago o el cumplimiento de una obligación garantizada por la garantía mobiliaria u otro gravamen sobre propiedad mueble o inmueble también incluirá los derechos a la garantía mobiliaria, la hipoteca u otro gravamen". 19 LPRA sec. 2233(g). En lo pertinente, el comentario oficial a esta sección del Artículo 9 Revisado del Uniform Commercial Code informa que lo que hace esta disposición nueva es meramente codificar "the common-law rule that a transfer of an obligation secured by a security interest or other lien on personal or real property also transfers the security interest or lien". UCC Sec. 9-203, Comment 9 (2014). Asimismo, la nueva ley extiende automáticamente la perfección de la garantía mobiliaria a los derechos sobre una hipoteca en que subyace un pagaré, para que surta efecto en cuanto a terceros, como otros acreedores hipotecarios e *hipotecantes* no deudores. 19 LPRA sec. 2258.

una escritura para constituir una hipoteca sobre la totalidad de una finca, que les pertenecía en común *pro indiviso*, en garantía de un pagaré hipotecario que únicamente fue suscrito por el matrimonio Ventura-Abreu. Por lo tanto, los esposos San Miguel-Hernández hipotecaron su inmueble en garantía de una obligación principal perteneciente a terceros, a saber, los Ventura-Abreu.

El pagaré hipotecario suscrito por el matrimonio Ventura-Abreu era pagadero a la presentación y a Doral Bank o a su orden. Además, era una promesa incondicional de pago, ya que no contenía ninguna otra promesa o compromiso, salvo la garantía hipotecaria. Por lo tanto, el pagaré hipotecario era un instrumento negociable. Éste fue emitido por el matrimonio Ventura-Abreu a favor de Doral Bank. En el 2004, al saldo de la deuda con el banco, Doral Bank endosó el pagaré a favor de los Ventura-Abreu y les cedió la posesión del instrumento negociable. Esto constituyó una negociación válida del instrumento y, a la vez, causó una readquisición del instrumento negociable por parte de los emisores, a saber, los Ventura-Abreu.

Los Ventura-Abreu, entonces tenedores del instrumento negociable, decidieron no cancelarlo. En vista de ello, y pese a la confusión momentánea de derechos, no se extinguió la obligación de pago ni la garantía hipotecaria accesoria. Al contrario, los Ventura-Abreu decidieron poner el pagaré nuevamente en circulación mediante un acuerdo de constitución de garantía mobiliaria sobre el pagaré hipotecario intitulado *Mortgage Note Pledge and Security Agreement.* En éste nada dispusieron para variar el derecho aplicable al acuerdo. Este acuerdo, a su vez, fue pactado como garantía de una obligación principal de Ven-Lour con Desarrolladora Caribe.

En la transacción garantizada concurrieron los tres elementos para la constitución de una garantía mobiliaria mediante posesión según la LTC, a saber: (1) se dio valor por parte de Desarrolladora Caribe mediante los adelantos

y préstamos que convino efectuar en el Acuerdo; (2) el matrimonio Ventura-Abreu tenía derechos sobre la propiedad gravada, y (3) a través de su apoderado, el matrimonio Ventura-Abreu puso a Desarrolladora Caribe en posesión del pagaré hipotecario a tenor de un acuerdo. La constitución de la garantía mobiliaria sobre el instrumento negociable mediante posesión también perfeccionó automáticamente la garantía mobiliaria, ocasionando que ésta surtiera efecto contra terceros desde cuando se cedió la posesión del instrumento a Desarrolladora Caribe. Debido a que las partes no pactaron disposición alguna sobre el derecho aplicable, aplican automáticamente las disposiciones de la LTC sobre las garantías mobiliarias. Éstas obran en exclusión de las disposiciones del Código Civil sobre la figura de la prenda y, por lo tanto, no era necesario suscribir un acuerdo con fecha autenticada ante notario para que la garantía surtiera efecto contra terceros.

La actuación de los esposos Ventura-Abreu fue totalmente válida, puesto que éstos eran los únicos tenedores del pagaré hipotecario y tenían completa facultad para negociarlo u otorgarlo en garantía. Para llevar a cabo cualquier acto de administración o enajenación sobre el pagaré, como constituir una garantía sobre éste, el matrimonio Ventura-Abreu no necesitaba el consentimiento del matrimonio San Miguel-Hernández. Aún si los esposos San Miguel-Hernández constituyeron la hipoteca que garantiza el pagaré concernido, cualquier transacción posterior sobre el pagaré versará enteramente sobre éste. La hipoteca, en su función accesoria perseguirá al pagaré si éste se transfiere o se extinguirá si éste se cancela.

Puesto que ni la obligación principal representada en el pagaré ni la hipoteca que servía de garantía a ésta estaban extintas, la constitución de garantía mobiliaria sobre el pagaré hipotecario también se extendió a los derechos a la hipoteca subyacente sobre la finca perteneciente en común *pro indiviso* al matrimonio Ventura-Abreu y el matrimonio

San Miguel-Hernández. Consecuentemente, Desarrolladora Caribe estaba en su pleno derecho de ejecutar la garantía mobiliaria y la hipoteca subyacente en ocasión de un impago por parte de Ven-Lour.

Erró el Tribunal de Apelaciones al razonar lo contrario debido a que el inmueble hipotecado no le pertenecía exclusivamente a los esposos Ventura-Abreu. Como bien razonó la jueza Domínguez Irizarry en su opinión disidente, Desarrolladora Caribe tiene una garantía válida sobre un instrumento negociable que la faculta a ejecutar la garantía principal sobre el pagaré hipotecario, así como la garantía hipotecaria accesoria a ésta, en ocasión de un impago. Procede devolver el caso al foro primario para que se venda en pública subasta la finca concernida de no efectuarse el pago de la suma adeudada.

## IV

En conformidad con lo anterior, *se dictará sentencia que revoque la Sentencia del Tribunal de Apelaciones y confirme la Sentencia emitida por el Tribunal de Primera Instancia.*

La Jueza Asociada Señora Pabón Charneco y el Juez Asociado Señor Rivera García concurrieron sin opinión escrita.