Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| SAN CARLOS MORTGAGE, LLC **Apelante**<br><br>V.<br><br>SUNC. DE ROSE MARY HERNÁNDEZ DAMIANI compuesta por JOHN GERVASIO ORTA BERRIOS por sí y en la cuota viudal usufructuaria, FULANA DE TAL, CENTRO DE RECAUDACIÓN DE INGRESOS MUNICIPALES **Apelado** | KLAN202400187 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Civil. Núm. HU2022CV00611<br><br>Sobre:<br>Cobro de Dinero y Ejecución de Hipoteca |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 16 de mayo de 2024.

El 28 de febrero de 2024, San Carlos Mortgage, LLC (San Carlos o apelante) presentó una *Apelación* y nos solicitó la revisión de una *Sentencia Sumaria* que se dictó el 26 de enero de 2024 y se notificó el 29 de enero de 2024 por el Tribunal de Primera Instancias, Sala Superior de Humacao (TPI o foro primario). Mediante el aludido dictamen, el TPI declaró Ha Lugar una moción de sentencia sumaria presentada por el Sr. John Gervasio Orta Berrios y la Sucesión de Rose Mary Hernández Berrios (en conjunto, los apelados). En consecuencia, se ordenó la desestimación del pleito de ejecución de hipoteca instado por el apelante y, además, le ordenó al Registro de la Propiedad a que calificara de conformidad a lo dispuesto en el dictamen.

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen apelado.

Número Identificador

SEN2024 _____

I.

El 6 de mayo de 2022, Oriental Bank presentó una *Demanda* sobre ejecución de hipoteca contra los apelados.[1] Alegó que los apelados eran dueños de una propiedad la cual estaba gravada con una hipoteca que presuntamente estaba inscrita y constaba en la Escritura Pública Núm. 186 otorgada el 25 de abril de 2006. Adujo que, dado a que las mensualidades de la aludida hipoteca se dejaron de pagar, a partir del 1 de septiembre de 2011, se declaró vencida la totalidad de la deuda. En ese sentido, planteó que la deuda en cuestión ascendía a $367,677.48 en concepto de principal, más los intereses al 5.875% anual desde el 1 de agosto de 2011, las cantidades devengadas en impuestos y primas de seguros hasta su completo pago y $39,750.00 en concepto de costas, gastos y honorarios de abogados. Por tales razones, le solicitó al TPI a que condenara a los apelados al pago de las cantidades antes descritas y, a que en su día, se ejecutara la hipoteca.

Posteriormente, el 24 de mayo de 2022, San Carlos presentó una *Urgente Moción de Sustitución de Parte y Cesión de Interés* en la cual aclaró que esta era la tenedora actual del pagaré objeto de este pleito.[2] A esos efectos, el 6 de septiembre de 2022, San Carlos presentó una *Demanda Enmendada,* en la cual actualizó ciertos datos referente a las partes.[3]

Así las cosas, el 7 de octubre de 2022, los apelados presentaron una *Contestación a Demanda.*[4] En esta, sostuvieron que, el 25 de abril de 2006, a los apelados se le concedió un préstamo hipotecario tipo *ballon* pero que este tenía una fecha de vencimiento al 1 de mayo de 2013. Además, destacaron que este instrumento negociable intitulado *Balloon Note* no fue modificado

---

[1] Véase apéndice del apelante, págs. 1-3.
[2] Íd., págs. 14-15.
[3] Íd., págs. 63-67.
[4] Íd., págs. 123-130.

antes de dicha fecha de vencimiento. Por su parte, argumentaron que la hipoteca que presuntamente gravaba la propiedad se inscribió luego de que venciera la obligación principal. Por ello, solicitaron que el TPI declarara No Ha Lugar el pleito de autos.

Subsiguientemente, ese mismo día, los apelados presentaron una *Moción de Sentencia Sumaria.*[5] Mediante esta, especificaron que la hipoteca en cuestión fue presentada el 12 de diciembre de 2013 e inscrita el 27 de diciembre de 2021. En esta coyuntura, esbozaron que el acreedor que fuese tenedor del pagaré tenía tres (3) años a partir de la fecha de vencimiento de dicho instrumento para recobrar su acreencia. Explicaron que esto último respondía a que el instrumento negociable intitulado *Balloon Note* era un pagaré regular de fecha específica, los cuales tienen un término de prescripción dispuesto por la *Ley de Transacciones Comerciales,* infra. Concluyeron que, al esto ser así, no existía controversia sustancial que impidiera la resolución sumaria del pleito y por ello, ordenar la cancelación de la inscripción de la hipoteca y desestimar el caso.

Por su parte, el 16 de noviembre de 2022, San Carlos presentó su *Oposición a Sentencia Sumaria.*[6] En esencia, puntualizó que el instrumento negociable vencido en este caso se trataba de un pagaré hipotecario. Agregó que, por tal motivo, el término para instar la presente acción era de veinte (20) años a partir del vencimiento de la deuda, por lo cual la obligación no se encontraba prescrita al momento en que se incoó la *Demanda* de autos. Asimismo, subrayó que conforme al principio de retroactividad contenido en el Art. 19 de la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico,* infra, la fecha de inscripción de la hipoteca se retrotrajo a la fecha de presentación. Por estos fundamentos, le

---

[5] Íd., págs. 131-150.
[6] Íd., págs. 200-216.

solicitó al TPI que declarara No Ha Lugar a la solicitud de sentencia sumaria.

Evaluado los escritos, el 26 de enero de 2024, el TPI emitió una *Sentencia Sumaria*.[7] Según se desprende de dicho dictamen, el foro primario formuló las siguientes determinaciones de hechos:

1. El día 25 de abril de 2006 las partes otorgaron la escritura de individualización, liberación y compraventa número 11 ante el notario José Lebrón Duran. El mismo día se otorgó escritura de hipoteca número 186 ante la notaria Maritza Silva Cofresi en garantía de pagaré a favor de la parte demandante. En las escrituras, la parte demandada compró e hipotecó la siguiente propiedad:

   URBANA: Apartamento número Siete (7). Apartamento residencial localizado en el segundo piso de la sección Oeste del Edificio ('Cedar West') del Condominio conocido como The Woods at Palmas del Mar situado en el Barrio Candelero Abajo del Municipio de Humacao, Puerto Rico, con una cabida de 1,998.01 pies cuadrados equivalentes a 185.69 metros cuadrados. En lindes por el NORTE, en una distancia de 43'3' con pared que lo separa de los elementos comunes exteriores del condominio; por el SUR, en una distancia de 43'3' pies con pared que lo separa de los elementos comunes exteriores del condominio; por el ESTE, en una distancia de 63'6' pies con Apartamento Número 4; por el OESTE, en una distancia de 63'6' pies con pasillo común que conduce al exterior y el Apartamento Número 8. La puerta de entrada de este apartamento está situada en su lindero Oeste. Consta principalmente de sala-comedor, cocina, tres (3) habitaciones dormitorios, dos y medio (2½) baños, laundry, terraza y dos (2) balcones.
   Le corresponden dos (2) espacios de estacionamiento marcados con los números 7A y 7B y otro para carrito de golf marcado con el número 7. Le corresponde una participación de 2.6931% en los elementos comunes del Condominio.

   2. El pagaré "Balloon Note" que suscribió la parte demandada contiene una fecha de vencimiento a 1 de mayo de 2013.

   3. El día 12 de diciembre de 2013 la parte demandante presentó en el Registro de la Propiedad la escritura de hipoteca número 186. El día 27 de diciembre de 2021 se inscribió la escritura de hipoteca.

   4. El día 6 de mayo de 2022 la parte demandante presentó la demanda de autos reclamando a la parte demandada el pago de $367,377.48, más interés al 5.875% anual por haber dejado de pagar mensualidades vencidas de la hipoteca desde el 1 de septiembre de 2011. Adicionalmente la parte

---

[7] Íd., págs. 314-322.

demandante solicitó el pago de $39,750.00 para costas, gastos y honorarios de abogado.[8]

A base de estas determinaciones de hechos, el TPI concluyó que el acreedor de la deuda en controversia tenía tres (3) años para instar la acción correspondiente para recobrar su acreencia, cosa que no se hizo. Por consiguiente, el foro primario concedió la moción de sentencia sumaria y le ordenó al Registro de la Propiedad a que calificara de conformidad a lo dispuesto en el dictamen.

Inconforme, el 28 de febrero de 2024, el apelante compareció ante nos mediante una *Apelación* y formuló los siguientes señalamientos de error:

**Primer Error: El TPI cometió un error manifiesto y abusó de su discreción al concluir que la Escritura de Hipoteca fue presentada por primera vez en el Registro de la Propiedad el 12 de diciembre de 2013, cuando surge del récord que esto ocurrió el 22 de mayo de 2006.**

**Segundo Error: Erró el TPI al concluir que las acciones de cobro de dinero y ejecución de hipoteca están prescritas, ignorando para ello el principio de la retroactividad del asiento de inscripción a su fecha de presentación, la vigencia del pagaré al momento de su presentación y el término prescriptivo aplicable a los pagarés hipotecarios.**

Atendido el recurso, el 4 de marzo de 2024, emitimos una *Resolución* concediéndole a los apelados hasta el 27 de abril de 2024 para presentar su alegato en oposición. Oportunamente, el 25 de marzo de 2024, los apelados comparecieron con su *Alegato de la Parte Apelada* y negaron que el TPI cometiera los errores que San Carlos le imputó. Con el beneficio de la comparecencia de las partes, procedemos a resolver la controversia que está ante nuestra consideración.

---

[8] Íd., págs. 316.

## II

### -A-

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, 32 LPRA. Ap. V, R. 36, tiene el propósito primordial de proveer una solución justa, rápida y económica en aquellos casos en que surja de forma clara que no existen controversias materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015).

Particularmente, la Regla 36.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.2, permite que cualquier parte presente una moción, basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad o alguna parte de la reclamación. *Municipio de Añasco v. ASES et al.*, 188 DPR 307, 326 (2013). Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de la causa de acción". Íd.

Solicitada la sentencia sumaria basada en declaraciones juradas o en documentos admisibles en evidencia, la parte que se opone a la sentencia sumaria no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones consignadas en su alegación**.** *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018). Por el contrario, dicha parte tiene que refutar los hechos alegados y sustanciar su posición con prueba consistente en contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. Íd. Es decir, esa persona viene obligada a enfrentar la moción de su adversario de forma tan detallada y especifica como lo ha hecho el promovente en su solicitud puesto que, si incumple con lo antes mencionado

corre el riesgo de que se dicte sentencia es su contra. Regla 36.3 de Procedimiento Civil, *supra*; *SLG Zapata- Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013).

Ahora bien, según estableció el Tribunal Supremo en el caso *Verá v. Dr. Bravo*, 161 DPR 308, 334-335 (2004), los foros revisores utilizarán los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. Sobre el particular, en *Meléndez González et al. v. M. Cuebas,* supra*, pág. 118, el Tribunal Supremo estableció que al revisar una determinación del foro primario en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) examinar de *novo* el expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y con los discutidos en *SLG Zapata- Rivera v. J. Montalvo, supra;* (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar de *novo* si el TPI aplicó correctamente el derecho. Véase, además, *Rivera Matos, et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

Del mismo modo, el Tribunal Supremo ha reiterado que a menos que existan circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto y que la apreciación de la prueba se distancie de la realidad fáctica o esta sea inherentemente imposible o increíble, el tribunal apelativo deberá abstenerse de intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad hechas por el juzgador de los hechos. *Flores v. Soc. de Gananciales*, 146 DPR 45, 49 (1998). En otras palabras, las determinaciones que

hace el juzgador de los hechos no deben ser descartadas arbitrariamente ni tampoco deben sustituirse por el criterio del foro apelativo, a menos que de la prueba admitida surja que no existe base suficiente que apoye tal determinación. *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420, 433 (1999).

**-B-**

La hipoteca "es un derecho real que sujeta o vincula lo hipotecado a que eventualmente su titular pueda exigir la realización de su valor, así como tomar medidas para salvaguardarlo, en seguridad o garantía de la efectividad de alguna obligación dineraria". *Bco. Popular v. Registrador*, 181 DPR 663, 673 (2011). Esta garantiza una obligación pecuniaria la cual recae sobre los bienes inmuebles, ajenos y enajenables que estén bajo la posesión del titular o propietario. *Dist. Unidos Gas v. Sucn. Declet Jimenez*, 196 DPR. 96, 110 (2016).

Así, dado a que la hipoteca es un derecho real de realización de valor, su titular tiene la facultad de exigir la enajenación de la cosa que se dio en garantía para recobrar lo adeudado. *Bco. Popular v. Registrador*, supra, pág. 673. A tono con lo anterior, la hipoteca trae consigo la posibilidad de que, del deudor incumplir con su obligación, surja una venta en pública subasta del bien hipotecado. Íd.

Ahora bien, las características medulares de la hipoteca es su naturaleza **accesoria e indivisible, y que esta es un derecho de constitución registral**. *FirstBank v. Registradora*, 208 DPR 64, 92 (2021). Al ser de carácter accesorio, la hipoteca no es independiente a la vigencia de la obligación principal, por ello "la hipoteca subsiste mientras tenga vigencia el crédito garantizado, por lo que se extingue en todo caso que se extinga la obligación principal que garantiza". *Dist. Unidos Gas v. Sucn. Declet Jiménez*, supra, pág. 111.

Por otro lado, debido a que la hipoteca es un derecho real de carácter constitutivo, para que esta advenga a la vida jurídica, es indispensable que sea inscrita en el Registro de la Propiedad. *FirstBank v. Registradora,* supra, págs. 92–93. **Es por medio de la inscripción registral que se produce la garantía de crédito con eficacia *erga omnes*, pues es un derecho de trascendencia real.** Íd., 93.

Cónsono con lo previamente discutido, ha sido norma reiterada que en nuestro ordenamiento jurídico los títulos inscritos surten efectos en cuanto a terceros desde la fecha de su inscripción. La legislación registral aclara que se considerará la fecha de su inscripción para todos los efectos, la fecha de la presentación que deberá constar en la misma inscripción. Véase, Art. 19 de la Ley Núm. 210-2015, conocida como *la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico,* según enmendada, 30 LPRA sec. 6133. (Ley del Registro de la Propiedad).

**-C-**

El Art. 96 de la Ley del Registro de la Propiedad, *supra,* dispone que "en los casos de ejecución de hipotecas que garantizan instrumentos negociables, deberá darse cumplimiento a las disposiciones de la legislación mercantil vigente relativas al cobro de tales instrumentos". Conforme a ello, el Tribunal Supremo ha resuelto que la hipoteca que se constituye para garantizar instrumentos negociables o títulos transferibles por endoso o al portador le aplica la Ley Núm. 208-1995, conocida como la Ley de Transacciones Comerciales, según enmendada, 19 LPRA sec. 401 *et seq* (Ley 208-1995)*. DLJ Mortgage v. SLG Santiago-Ortiz,* 202 DPR 950, 963 (2019).

La Ley 208-1995 define un instrumento negociable como una promesa o una orden incondicional de pago de una cantidad

específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden si el mismo:

(1) Es pagadero al portador o a la orden al momento o cuando primero adviene a la posesión de un tenedor;

(2) Es pagadero a la presentación o en una fecha específica; y

(3) No especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero pero la promesa u orden puede contener (i) un compromiso o poder para dar, mantener o proteger colateral para garantizar el pago, (ii) una autorización o poder al tenedor para admitir sentencia o liquidar la colateral o disponer de ella de otra forma, o (iii) una renuncia al beneficio de cualquier ley que exista concediéndole una ventaja o protección a un deudor. 19 LPRA sec. 504(a).

También, la referida legislación define la promesa como "un compromiso escrito de pagar dinero suscrito por la persona que se obliga a pagar". 19 LPRA sec. 503(a)(9). Por otro lado, la Sec. 2-104(e) de la Ley 208-1995 establece que un instrumento se considerará un pagaré si es una promesa. Esto quiere decir que existe un pagaré cuando hay un compromiso escrito de pagar el dinero suscrito por la persona que se obliga a pagar. *Soto Sola v. Registradora*, 189 DPR 653, 663 (2013).

Ahora bien, en nuestro ordenamiento jurídico existen varios tipos de pagarés, los cuales dependen del momento de cuando resulten exigibles. Íd. Uno de estos pagarés son los pagaderos en fecha específica. La Sec. 2-108 (b) de la Ley 208-1995, define este concepto de la siguiente manera:

Una promesa u orden es "pagadera en fecha específica" si la misma es pagadera luego de transcurrido un período específico de tiempo desde su presentación o aceptación, o en una fecha o fechas fijas, o en un momento o momentos de tiempo fácilmente determinables en el momento en que se emite la promesa u orden, sujeto a los derechos de (i) prepago, (ii) aceleración, (iii) extensión a opción del tenedor, o (iv) extensión hasta una fecha posterior específica a opción del firmante o aceptante o automáticamente en o

después de la ocurrencia de un acto o evento específico. 19 LPRA sec. 508(b).

Por su parte, la Sec. 2-118 (a) de la Ley 208-1995 dispone que:

Salvo según se dispone en la subsección (e), una acción para exigir el cumplimiento de la obligación contraída por una parte de pagar un pagaré que es pagadero en una fecha específica deberá comenzarse dentro de los tres (3) años siguientes a la fecha o fechas de vencimiento estipuladas en el pagaré o, si la fecha de pago se acelera, dentro de los tres (3) años siguientes a la fecha de vencimiento acelerado. 19 LPRA sec. 518.

Ello quiere decir que una vez transcurre la fecha indicada en el pagaré, este vence. De esta manera, a partir de dicho momento, el acreedor tiene tres (3) años para exigir el cumplimiento del pago. *Soto Sola v. Registradora*, supra, pág. 665. El vencimiento significa la "[t]erminación del plazo establecido legal o convencionalmente para el cumplimiento de una obligación" Íd., pág. 666 citando a M. Osorio, *Diccionario de ciencias jurídicas, políticas y sociales*, Buenos Aires, Ed. Heliasta, 1992, pág. 1004. Por otro lado, la vigencia de un pagaré corresponde al periodo durante el cual las leyes, las costumbres o los contratos están en vigor y desarrollan los efectos jurídicos que le son característicos. Íd., pág. 667. Por consiguiente, mientras una obligación tenga esos efectos jurídicos estará vigente y cuando se pierda dicho efecto jurídico, entonces se perderá dicha vigencia. Íd.

Ahora bien, nuestro sistema de derecho permite que estos instrumentos negociables puedan ser garantizados con una hipoteca. En ese sentido, el Art. 91 de la Ley del Registro de la Propiedad, *supra*, sec. 6118, establece que cuando se constituya una hipoteca para garantizar un instrumento negociable, el derecho hipotecario se transferirá con el instrumento sin necesidad de dar conocimiento al deudor. Además, a la hora de inscribir la hipoteca que garantice el instrumento negociable, se deberá cumplir con los

lineamientos establecidos en el Art. 92 de la Ley del Registro de la Propiedad, *supra*, sec. 6119.

Conforme a lo anteriormente discutido, un pagaré garantizado por una hipoteca puede ser un instrumento negociable porque el compromiso de ofrecer como colateral la hipoteca para garantizar el pago no afecta su negociabilidad. *Des. Caribe v. Ven-Lour Enterprises*, 198 DPR 290, 299 (2017). Sin embargo, conforme surge de la sec. 2-118 (h) de la Ley 208-1995, *supra*, sec. 218, una acción para exigir el cumplimiento de una obligación de una parte de pagar un pagaré garantizado por una hipoteca sobre bienes inmuebles, y todo interés devengado por tal obligación, deberá iniciarse dentro del término dispuesto en el Código Civil que regula el término para el ejercicio de la acción hipotecaria, el cual es de veinte (20) años. Es decir, tanto la acción de ejecutar la hipoteca como el término prescriptivo del pagaré hipotecario es de veinte (20) años. *Soto Sola v. Registradora*, supra, pág. 665. Dicho término comenzará a transcurrir a partir del vencimiento la obligación hipotecaria. Íd., pág. 668.

### III.

En el presente caso, el apelante nos solicitó la revocación de la *Sentencia Sumaria* que el TPI dictó el 26 de enero de 2024 y notificó el 29 de enero de 2024. Específicamente, en su primer señalamiento de error, sostuvo que el foro primario abusó de su discreción al concluir que la hipoteca se presentó por primera vez en el registro de la propiedad el 12 de diciembre de 2013 cuando presuntamente surgía del expediente que la hipoteca se había presentado el 22 de mayo de 2006. Por otro lado, en su segundo señalamiento de error, planteó que el TPI erró al determinar que las acciones de cobro de dinero y de ejecución de hipoteca estaban prescritas sin haber tomado en consideración asuntos tales como el principio de retroactividad de la inscripción de un asiento a la fecha

de presentación, la vigencia del pagaré al momento de su presentación y el término prescriptivo del pagaré hipotecario.

Antes de atender los señalamientos de error previamente reseñados, cabe precisar que, al momento de revisar la concesión de una sentencia sumaria, nos encontramos en la misma posición que el TPI. A tono con esta norma, debemos evaluar, en primer lugar, si al presentar la solicitud de sentencia sumaria y su oposición las partes cumplieron con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra,* y con los dispuestos en *SLG Zapata-Rivera v. J.F. Montalvo,* supra. Al evaluar los escritos presentados por las partes juzgamos que, en esencia, ambas cumplieron con los referidos requisitos. Es decir, los apelados presentaron una serie de párrafos enumerados de los hechos que considera incontrovertidos, los cuales, a su vez, hacían referencia a la prueba en que se apoyaba. De la misma manera San Carlos señaló los hechos que, a su juicio, estaban en controversia y lo sustentó con prueba documental. Resuelto lo anterior, nos corresponde entonces evaluar si existen hechos materiales en controversia que nos impidan dictar sentencia sumaria.

En su dictamen, el foro primario realizó cuatro (4) determinaciones de hechos las cuales procederemos a resumir y adoptar en su totalidad. El 25 de abril de 2006, las partes de epígrafe otorgaron la Escritura Núm. 11, intitulada *Escritura de Individualización, Liberación y Compraventa* y la Escritura Núm. 186 de Hipoteca en garantía de un pagaré a favor de los apelados. De dichas escrituras se desprende que los apelados compraron una propiedad inmueble sita en el municipio de Humacao. Del mismo modo, el pagaré que suscribieron los apelados intitulados *Balloon Note* contenía una fecha de vencimiento al 1 de mayo de 2013. Sin embargo, la hipoteca de la Escritura Núm. 186 fue presentada ante el Registro de la Propiedad para su inscripción el 12 de diciembre de

2013 y finalmente, la hipoteca se inscribió el 27 de diciembre de 2021. Posteriormente, el 6 de mayo de 2022, el apelante instó la demanda que origina la presente controversia en la cual adujo que los apelados habían dejado pagar las mensualidades desde el 1 de septiembre de 2011.

Tras haber revisado la totalidad del expediente, evaluados los argumentos de las partes y aquilatada la prueba documental que obra ante nos, concluimos que no existen hechos sustanciales en controversia que impidan dictar sentencia sumaria. Por ello, nos resta determinar si en efecto, las acciones de cobro de dinero y de ejecución de hipoteca presentada por el apelante en contra de los apelados estaban prescritas. De la misma forma, procederemos a discutir los señalamientos de error formulados por el apelante *Veamos.*

En su primer señalamiento de error, San Carlos alegó que el foro primario erró al determinar que la hipoteca fue presentada por primera vez el 12 de diciembre de 2013, cuando surgía del expediente que se había presentado previamente el 22 de mayo de 2006. Conforme se desprende de los autos, el 25 de abril de 2006, se suscribieron tres (3) documentos, a saber, la escritura de compraventa, la escritura de hipoteca, y el instrumento negociable intitulado *Balloon Note.* También surge de la prueba que, en efecto, el 22 de mayo de 2006, se presentó la Escritura Núm. 186 de Hipoteca ante el Registro de la Propiedad, aunque el 27 de diciembre de 2011 esta se tuvo que retirar pues el Registrador notificó una serie de faltas que impidieron su inscripción.[9]

De una lectura cuidadosa del dictamen apelado, no surge expresamente que el TPI concluyera que la hipoteca se presentó por primera vez el 12 de diciembre de 2013. Cualquier expresión que

---

[9] Véase apéndice del apelante, págs. 291-292.

haya realizado el foro primario referente a la diligencia que se llevó a cabo en el proceso de inscripción de hipoteca en este caso, no crea derecho. Tampoco se puede perder de perspectiva que, esa segunda presentación fue la que finalmente culminó con la inscripción de la hipoteca en cuestión, por lo cual esa es la fecha relevante en la controversia de epígrafe. Por tal motivo, colegimos que el primer señalamiento de error formulado por San Carlos no se cometió.

Resuelto lo anterior, nos corresponde atender el segundo señalamiento de error, el cual versa sobre los términos prescriptivos tanto de la acción de cobro de dinero como de la acción hipotecaria. Tal y como surge del expediente, las partes suscribieron el instrumento negociable intitulado *Balloon Note,* el cual el foro primario determinó como un hecho incontrovertido que este tenía una fecha de vencimiento al 1 de mayo de 2013. Específicamente, referente a la naturaleza de los pagos de dicho instrumento negociable, puede observarse lo que sigue:

### 3.PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month. I will make my monthly payments on the 1" day of each month beginning on June, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. **If, on May 1st, 2013, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." The last payment it will be in the amount of $357,867.37** (Énfasis Suplido).[10]

Del mismo modo, destacamos parte del contenido de una certificación registral del inmueble en controversia, el cual expresa lo siguiente:

**Hipoteca**: Por sí, se encuentra afecta a HIPOTECA EN GARANTÍA DE PAGARÉ. A FAVOR DE: Banco Bilbao

---

[10] Íd., pág. 33.

Vizcaya Argentaria Puerto Rico. VALOR TRANSACCIÓN: $397,500.00. INTERESES: Con intereses al 5 7/8 % anual. **FECHA DE VENCIMIENTO: El 1ro de mayo de 2013**.[11]

Ante este lenguaje, se puede percibir que el *Balloon Note* es un instrumento negociable pagadero en fecha específica conforme a la Sec. 2-108 (b) de la Ley 208-1995, *supra*, pues este instrumento negociable contiene una fecha de vencimiento, a saber, el 1 de mayo de 2013. Ahora bien, la *Ley de Transacciones Comerciales* es clara en cuanto al término que tiene un acreedor para instar una acción de recobro de su acreencia en este tipo de instrumento. Dicha legislación especial establece que se deberá cobrar la deuda en un periodo de tres (3) años a partir de su vencimiento. Transcurrido los tres (3) años, todo derecho que tuviera el acreedor quedará extinto. En otras palabras, ese derecho de crédito que genera el instrumento negociable dejará de tener eficacia jurídica si no se insta la correspondiente acción para recobrar la acreencia dentro del término dispuesto. No obstante, si el instrumento negociable estuviese garantizado por una hipoteca, entonces el término para presentar la acción de cobro de dinero sería de veinte (20) años.

Es preciso destacar que en la presente controversia no se inscribió hipoteca alguna hasta el **27 de diciembre de 2021**. Si bien hubo una primera presentación el 22 de mayo de 2006, esta fue retirada el **27 de diciembre de 2011** por la notificación de una serie de faltas por parte del Registro de la Propiedad. Por ende, durante todo ese periodo, el *Balloon Note* no estuvo garantizado por ninguna hipoteca. No fue hasta **12 de diciembre de 2013**, ya habiéndose vencido el *Ballon Note*, que se volvió a **presentar** por segunda ocasión la escritura de hipoteca ante el Registro de la Propiedad. Sin embargo, esta terminó **inscribiéndose** ocho (8) años después, **el 27 de diciembre de 2021**.

---

[11] Íd., pág. 287.

Nótese que, al momento de la inscripción de la referida hipoteca, la obligación principal, entiéndase, el *Balloon Note* había vencido. Conviene puntualizar que, en nuestro ordenamiento jurídico, la hipoteca es un derecho real de carácter constitutivo, **el cual adviene a la vida jurídica al momento de su inscripción.** Por ende, al *Balloon Note* ser **un instrumento negociable que al momento de su vencimiento no estaba gravada con una hipoteca inscrita**, el término para cobrar la deuda del pagaré era el dispuesto por la Sec. 2-118 (a) de la Ley 208-1995, a saber, tres (3) años a partir de su vencimiento y no el término de veinte (20) años correspondiente a los instrumentos garantizados con una hipoteca.

Al aplicar los principios previamente esbozados, vemos que el *Balloon Note* tenía una fecha específica de vencimiento al 1 de mayo de 2013. Por tanto, el acreedor de dicho pagaré tenía hasta el 1 de mayo de 2016 para ejercitar su derecho de cobro sobre la deuda. No obstante, conforme a la prueba que obra en el expediente, dicha gestión no se hizo, lo cual tuvo la consecuencia fatal de que la causa de acción en cobro de dinero quedara prescrita. Además, cabe mencionar que, por su característica inherente de accesoriedad, la hipoteca en cuestión **nunca cobró vida jurídica** toda vez que, en el momento de la inscripción, **no existía obligación principal a la cual esta pudiera servir de garantía**. Por tal motivo, al nunca haberse podido concretizar la garantía hipotecaria en el *Balloon Note*, la acción hipotecaria instada por San Carlos no se podía llevar a cabo puesto que la hipoteca nunca existió.

A la luz de la normativa y los fundamentos expuestos anteriormente, concluimos que el dictamen del foro primario fue correcto en derecho, por lo cual el segundo señalamiento de error formulado por el apelante no se cometió.

IV.

Por los fundamentos que anteceden, ***confirmamos*** la determinación recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones