ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| CONDADO 5, LLC<br><br>Peticionario<br><br>v.<br><br>PEDRO JOSÉ PALOU BOSCH T/C/C PEDRO JOSÉ PALAU BOSCH, SU ESPOSA, NAYDA TERESA DEL VALLE APELLANIZ T/C/C NAYDA DEL VALLE APELLANIZ T/C/C NEIDA TERESA DEL VALLE APELLANIZ Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS<br><br>Recurridos | KLCE202401003 | *Certiorari*<br>procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br><br>Sobre:<br>Cobro de Dinero y Ejecución de Hipoteca Propiedad Comercial<br><br><br>Caso Número:<br>SJ2022CV06216 |

Panel integrado por su presidenta, la Jueza Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

*Prats Palerm, Jueza Ponente*

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 16 de octubre de 2024.

Comparece Condado 5 LLC (en adelante, "Condado" o "parte peticionaria") mediante una *Petición de Certiorari*. Nos solicita la revocación de la *Resolución* emitida y notificada el 25 de junio de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "TPI"). Mediante el referido dictamen, el TPI declaró *No Ha Lugar* la *Moción de Sentencia Sumaria* bajo el fundamento de existencia de hechos materiales en controversia.

Por los fundamentos que expondremos a continuación, *denegamos* la expedición del auto de *certiorari*.

**I.**

El 14 de julio de 2022, Condado instó una *Demanda* de cobro de dinero y ejecución de hipoteca en contra del señor Pedro José Palou y la señora Nayda Teresa del Valle Apellaniz y la Sociedad de Bienes Gananciales compuesta por ambos. En síntesis, alegó que el 4 de enero de 2008, los

Número Identificador
RES2024_____

demandados suscribieron un pagaré hipotecario a favor de FirstBank Puerto Rico, o a su orden, por la suma de $853,525.00, intereses al 9% anual pagadero en plazos mensuales de $7,606.08 sobre dos inmuebles radicados en la localidad de Río Piedras.[1] Según expuso la parte demandante, actualmente es tenedora de dicho pagaré. En virtud de lo anterior, señaló que los codemandados adeudan $816,657.32 en razón del pago principal y sus correspondientes intereses al 9.75%, entre otros extremos. Por tal motivo, peticionó que el tribunal ordenara a los demandados a emitir el pago de la deuda hipotecaria. De no efectuarse dicho pago, solicitó la celebración de una pública subasta por el precio mínimo pactado sobre las referidas propiedades inmuebles.

En respuesta, el 26 de agosto de 2022, los codemandados presentaron su *Contestación a la Demanda*. En esencia, adujeron que la deuda en cuestión no es líquida ni exigible. Arguyeron, también, que Condado carece de legitimación para instar la presente causa de acción. Sobre este particular, indicaron que dicha entidad previamente instó un proceso judicial en torno al pagaré hipotecario extraviado. Sin embargo, señalaron que Condado no les notificó sobre este procedimiento. Por lo que, aseveró que no existe un endoso hipotecario a favor de la parte demandante. En vista de ello, peticionaron que el foro primario declarara *No Ha Lugar* la *Demanda*, y consecuentemente, decretara su desestimación.

Luego de una serie de trámites procesales, el 7 de junio de 2023, Condado presentó una *Moción de Sentencia Sumaria*. En esta, reiteró que es tenedor de buena fe del pagaré en garantía hipotecaria. Alegó que la parte demandada incumplió su obligación de emitir los correspondientes pagos. Por tanto, requirió que el foro primario declarara *Ha Lugar* su reclamación, y ordenara el pago de la aludida deuda ante la inexistencia de hechos controvertidos. Solicitó, también, que de no efectuarse tal pago, el tribunal

---

[1] Surge de las alegaciones que estas propiedades corresponden a la Sección III de San Juan a tenor con las constancias descritas en el Registro de la Propiedad.

celebrara una pública subasta para la correspondiente venta de los bienes inmuebles gravados.

Por su parte, el 5 de julio de 2024, los demandantes sometieron su *Oposición a Moción de Sentencia Sumaria*. Especificaron que el tribunal debe resolver si la entidad demandante es la tenedora por endoso y de buena fe del pagaré hipotecario. Particularmente, aseguraron que el derecho invocado por Condado surge de un proceso judicial nulo por falta de notificación. Ante tales alegaciones, indicaron que median hechos materiales en controversia que no permiten la disposición sumaria del caso.

Examinadas ambas posturas, el 25 de junio de 2024, el tribunal recurrido dictó una *Resolución*, en la cual declaró *No Ha Lugar* la petición de sentencia sumaria. En lo atinente, identificó la existencia de controversias en los siguientes hechos materiales:

> **1. Si Condado 5 LLC es la tenedora por endoso, por valor recibido y de buena fe del pagaré hipotecario que garantiza la hipoteca objeto de la causa de acción.**
>
> **2. Si la cantidad reclamada como adeudada por los demandados es líquida, vencida y exigible ante las variaciones unilaterales de los acreedores de los pagos mensuales.**

Así especificado, dispuso que no surge del expediente ante su consideración una corroboración del cómputo del balance de cancelación del pagaré. Estableció, además, que los cambios en los pagos mensuales y la variación sobre la tasa del interés anual del préstamo hipotecario llevan a concluir que la deuda no es líquida, vencida ni exigible. Conforme a tal razonamiento, determinó que persisten controversias materiales que impiden acoger la vía sumaria del caso presente.

Oportunamente, el 10 de julio de 2024, Condado presentó una *Moción de Reconsideración.* En lo concerniente a la anterior causa de acción sobre el pagaré extraviado, manifestó que solo notificó a FirstBank y Island Holding, pues eran los últimos acreedores conocidos de acuerdo con las constancias del Registro de la Propiedad. Al respecto, adujo que según el caso de *Popular Mortgage v. Registrador*, 181 DPR 625 (2011), no tenía que

notificar a los deudores demandados. Amparado en el derecho de acreencia insistió que procede dictar sentencia sumaria a su favor.

Por su parte, el 15 de agosto de 2024, los codemandados recurridos sometieron una *Réplica a Moción de Reconsideración.* En su escrito, recalcaron que Condado no les notificó sobre el proceso de sustitución del pagaré hipotecario extraviado. Por consiguiente, reiteraron que existen controversias sobre (1) el balance pendiente, (2) los cambios en la cantidad del pagaré de mensualidades, (3) la modificaciones a la tasa de interés anual fijo y (4) la falta de buena fe de la entidad demandante. Considerados los argumentos de las partes, 19 de agosto de 2024, el foro primario declaró *No Ha Lugar* la solicitud de reconsideración.

Inconforme, el 18 de septiembre de 2024, Condado recurrió a este Tribunal de Apelaciones mediante una *Petición de Certiorari.* En su recurso, presentó los siguientes señalamientos de error:

**ERRÓ EL TPI AL DENEGAR LA MOCIÓN DE SENTENCIA SUMARIA Y DETERMINAR QUE EXISTE CONTROVERISA EN TORNO A SI LA PETICIONARIA ES TENEDORA POR ENDOSO, POR VALOR RECIBIDO Y DE BUENA FE DEL PAGARÉ HIPOTECARIO QUE GARANTIZA LA HIPOTECA DE LA CUAL SE SOLICITA SU EJECUCIÓN MEDIANTE LA PRESENTE ACCIÓN.**

**ERRÓ EL TPI DENEGAR LA MOCIÓN DE SENTENCIA SUMARIA Y DETERMINAR QUE EXISTE CONTROVERSIA EN TORNO A SI LA CANTIDAD RECLAMADA COMO ADEUDADA ES LÍQUIDA, VENCIDA Y EXIGIBLE.**

El 23 de septiembre de 2024, esta Curia emitió una *Resolución* en la que ordenamos a los demandados-recurridos a presentar su oposición dentro del término de diez (10) días. En cumplimiento con lo anterior, el 30 de septiembre de 2024, sometieron su *Oposición a la Expedición del Auto de Certiorari.* Con el beneficio de la comparecencia de las partes, procedemos a discutir el marco legal pertinente a la controversia ante nuestra consideración.

## II.
### *A. Recurso de certiorari*

El auto *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una

determinación de un tribunal inferior. *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021). *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163 (2020). Véase, también, Artículo 670 del Código de Enjuiciamiento Civil de 1933 de la Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva de este recurso "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Rivera Gómez v. Arcos Dorados Puerto Rico*, 212 DPR 194, 209 (2023); *IG Builders et al.* v. *BBVAPR*, 185 DPR 307, 338 (2012).

Ahora bien, el ejercicio de nuestra discreción judicial no es absoluto. A tales efectos, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias que activan nuestras facultades revisoras ante las resoluciones y las órdenes interlocutorias:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Aunque la Regla 52.1 de Procedimiento Civil, *supra*, nos concede la facultad para revisar las determinaciones interlocutorias recurridas, "la expedición del auto y la adjudicación en sus méritos es discrecional". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). En armonía con lo anterior, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, preceptúa los criterios para la expedición de un auto de *certiorari*:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Estas consideraciones orientan la función del foro apelativo para ejercer sabiamente nuestra facultad discrecional. *Rivera Gómez v. Arcos Dorados Puerto Rico, supra,* pág. 209. A su vez, la precitada disposición reglamentaria permite que el análisis revisorio no se efectúe en el vacío ni en ausencia de otros parámetros. *800 Ponce de León Corp. v. American International Insurance, supra*, pág. 176.

A la luz de tales preceptos, los tribunales revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto". *Citibank v. ACBI*, 200 DPR 724, 736 (2018). Véase, además, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013). Nos corresponde ser cuidadosos y consciente de la naturaleza de la controversia ante nuestra consideración en tal ejercicio discrecional. *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023).

### B. Solicitud de sentencia sumaria al amparo de la Regla 36.1 de Procedimiento Civil

La sentencia sumaria es un mecanismo que permite la ágil disposición de casos sin la celebración de un juicio sujeto a la inexistencia de controversias genuinas de hechos materiales. *Birriel Colón v. Supermercado Los Colobos*, 2023 TSPR 120, 213 DPR ___ (2023); *Segarra Rivera v. International Shipping Agency, Inc.*, 208 DPR 964, 979 (2022). Su propósito

es que los pleitos civiles sean solucionados de forma justa, rápida y económica. *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico*, 212 DPR 335, 350; *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 335 (2021). No obstante, solo procede su concesión "cuando surge claramente que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia." *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023); *Mejías v. Carrasquillo*, 185 DPR 288, 299 (2012).

A esos fines, la Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R.36.1, permite que una parte presente una solicitud de sentencia sumaria respaldada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). En esa dirección, "un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Oriental Bank v. Caballero García, supra*, pág. 679.

A tales efectos, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. 3, prescribe los requisitos de forma correspondiente a esta moción y su respectiva oposición. *Universal Insurance Company v. Estado Libre Asociado de Puerto Rico*, 211 DPR 455, 472 (2023). En lo concerniente, el precitado cuerpo reglamentario fija las formalidades que debe exhibir una petición de tal naturaleza: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por

las cuales debe ser dictada la sentencia argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(a).

De manera similar, la parte opositora de la sentencia sumaria "tiene que cumplir con los requisitos de la Regla 36 de Procedimiento Civil". *Oriental Bank v. Caballero García, supra*, pág. 680. No debe adoptar "una actitud pasiva y descansar en las aseveraciones o negaciones que consigne en su alegación". Íd. Le corresponde, "como parte de su carga, puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte una sentencia sumaria en su contra". *León Torres v. Rivera Lebrón*, 204 DPR 20, 44 (2020). Por tanto, enumerará los hechos materiales de buena fe controvertidos y aquellos sobre los que no media controversia. *Oriental Bank v. Caballero García, supra.*, pág. 680. También, indicará los párrafos o páginas de la prueba documental que establezcan o impugnen cada hecho. Íd. Asimismo, identificará "los argumentos del derecho aplicable por los cuales no se debe dictar la sentencia*". Fernández Martínez v. RAD-MAN San Juan, supra*, pág. 336.

Acatados tales requisitos procesales, "el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como los que obren en el expediente del tribunal". *Ramos Pérez v. Univisión, supra*, pág. 210; *Cruz Marcano v. Sánchez Tarazona*, 172 DPR 526, 550 (2007). En cuanto a los documentos presentados, estos deben analizarse de la forma más favorable para la parte promovida, concediéndole a ésta el beneficio de toda inferencia razonable que se pueda derivar de ellos. *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716, 734 (1994); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 721 (1986).

Conviene señalar que, no es recomendable emplear el mecanismo sumario en aquellos casos en los cuales median elementos subjetivos de intención, propósitos mentales o negligencia, o cuando el factor de

credibilidad sea esencial para dilucidar la controversia. *Segarra Rivera v. International Shipping Agency, Inc., supra,* pág. 980; *Soto v. Hotel Caribe Hilton,* 137 DPR 294, 301 (1994). No obstante, amerita su concesión "si el juzgador queda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y que una vista en los méritos es innecesaria". *Birriel Colón v. Supermercado Los Colobos, supra; SLG Fernández-Bernal v. RAD-MAN et al., supra,* pág. 337.

Recientemente el Tribunal Supremo de Puerto Rico atendió una controversia en torno a una petición sentencia sumaria en el contexto de ejecución de hipoteca. En lo pertinente, emitió el siguiente pronunciamiento judicial:

> La sentencia sumaria solo procede cuando no es necesaria la celebración de un juicio por no existir duda sobre los hechos esenciales, contarse con toda la evidencia necesaria y solo restar la aplicación del derecho. Es decir, procede cuando hay una inexistencia total de controversias sustanciales de hechos esenciales y pertinentes, siendo estos aquellos que podrían afectar el resultado de la reclamación de conformidad con el derecho aplicable. *Banco Popular de Puerto Rico v. Zorrilla Posada,* 2024 TSPR 62, 213 DPR __ (2024).

Así puntualizado, el foro supremo resolvió que no procedía la conceder la sentencia sumaria por existir controversia respecto a un hecho esencial relacionado con la extensión de la hipoteca. Razonó que tal elemento fáctico controvertido exigía el correspondiente desfile de prueba mediante la celebración de un juicio en su fondo. Un solo hecho material en controversia impidió que el tribunal acogiese la vía sumaria. Ello, pues, solamente procede dictar sentencia sumaria cuando surge claramente que ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia. *Oriental Bank v. Caballero García, supra,* pág. 679.

### C. *Estándar de revisión de las sentencias sumarias*

Los tribunales revisores nos encontramos en la misma posición que el Tribunal de Primera Instancia para determinar si procede una sentencia

sumaria. *Birriel Colón v. Supermercado Los Colobos*, *supra*. En este contexto, debemos efectuar un análisis a tenor con las siguientes consideraciones:

> (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;

> (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;

> (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos.

> (4) y de encontrar que los hechos materiales realmente están incontrovertidos debe revisar *de novo,* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas*, 199 DPR 664, 679 (2018).

Cabe destacar que, el foro apelativo solo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González v. M. Cuebas*, 193 DPR 100, 114 (2015). No obstante, no tenemos facultad para adjudicar hechos materiales en disputa, pues esa tarea corresponde al foro primario Íd., pág. 115.

### D. *Obligación asegurada por la constitución de una hipoteca*

En nuestro ordenamiento civil, la hipoteca constituye aquel derecho real que garantiza una obligación pecuniaria, por lo que, sus rasgos principales son: (1) su carácter accesorio e indivisible, (2) su constitución registral y (3) que recae directamente sobre bienes inmuebles, ajenos y enajenables, que permanecen en la posesión del propietario. *Banco Popular de Puerto Rico v. Zorrilla Posada, supra*; *Westernbank v. Registradora*, 174 DPR 779, 784 (2008). La constitución de este derecho permite que "su titular pueda exigir la realización de su valor, así como tomar medidas para salvaguardarlo, en seguridad o garantía de la efectividad de alguna obligación dineraria". *Matos Rivera v. Soler Ortiz*, 2024 TSPR 50, 213 DPR ___ (2024); *Popular v. Registrador*, 181 DPR 663, 673 (2011). Para cumplir su finalidad, es indispensable que la hipoteca conste en escritura pública y

se inscriba en el Registro. *Dist. Unidos Gas v. Sucn. Declet Jiménez,* 196 DPR 96, 110-111 (2016).

En armonía con lo anterior, el Artículo 1775 del Código Civil (1930)[2], Ley Núm. 48 de 28 de abril de 1930, 31 LPRA sec. 5043, según enmendada, establece que "[l]a hipoteca sujeta directa e inmediatamente los bienes sobre que se impone, cualquiera que sea su poseedor, al cumplimiento de la obligación para cuya seguridad fue constituida". Véase, también, *Delgado Pol v. Pietri Vélez,* 208 DPR 557, 576 (2022). Esta disposición implica que la garantía hipotecaria es un derecho accesorio al pagaré que nace y muere con este. *Haedo Castro v. Roldan Morales,* 203 DPR 324, 342 (2019) (citando a R.M. Roca Sastre, *Derecho hipotecario,* Barcelona, Ed. Bosch, 2009, T. VIII, pág. 97). Al ser así, "se le atribuye al crédito la cualidad de elemento principal de la relación jurídica". Íd. De tal modo, "subsiste mientras el crédito garantizado existe, y no a la inversa". Íd. Es decir, "la hipoteca se extingue en todo caso que se extinga la obligación garantizada por ésta". *Westernbank v. Registradora, supra,* pág. 785.

### E. Instrumentos negociables en el contexto de pagaré hipotecario

Las normas relativas a las transacciones comerciales disponen que "[l]os instrumentos negociables son documentos de crédito que incorporan el derecho a cobrar una suma de dinero, a los cuales el derecho cambiario les confiere una facilidad de circulación especial". *Des. Caribe v. Ven-Lour Enterprises,* 198 DPR 290, 297 (2017); *Cruz Consulting v. El Legado,* 191 DPR 499, 509-510 (2014). Al respecto, la Sección 2-104 de la Ley de Transacciones Comerciales, Ley Núm. 208 de 17 de agosto de 1995, 19 LPRA 504, según enmendada, provee la siguiente definición sobre instrumento negociable:

> [U]na promesa o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden, si el mismo:

---

[2] La Asamblea Legislativa de Puerto Rico derogó el Código Civil (1930) mediante la aprobación del Código Civil (2020), Ley Núm. 55 de 1 de junio de 2020, 31 LPRA sec. 5311, según enmendada. No obstante, precisamos que los hechos del recurso presente surgen con anterioridad a la aprobación de esta pieza legislativa. Por tanto, nos corresponde hacer referencia a las disposiciones del Código Civil (1930).

(1) es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor;

(2) es pagadero a la presentación o en una fecha específica; y

(3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero, pero la promesa u orden puede contener:

(i) un compromiso o poder para dar, mantener o proteger colateral para garantizar el pago,

(ii) una autorización o poder al tenedor para admitir sentencia o liquidar la colateral o disponer de ella de otra forma, o

(iii) una renuncia al beneficio de cualquier ley que exista concediéndole una ventaja o protección a un deudor.

El "pagaré es la forma más sencilla de instrumento negociable, ya que permite que dos personas intervengan en su otorgamiento: el firmante u otorgante y el tenedor". *Delgado Pol v. Pietri Vélez, supra,* pág. 552. La jurisprudencia interpretativa establece, además, que "es un pagaré cuando en el mismo hay un compromiso escrito de pagar el dinero suscrito por la persona que se obliga a pagar*". FirstBank Puerto Rico v. Registradora de la Propiedad de Ponce,* 208 DPR 64, 90-91 (2021). De igual modo, cuando una promesa de pago está respaldada en una garantía real sobre propiedad inmueble se trata de un pagaré hipotecario. Íd. pág. 91.

En ciertos escenarios existe un portador, quien es la persona en posesión de un instrumento, documento de título, o valor con certificado pagadero al portador o endosado en blanco. 19 LPRA sec. 451. Respecto al pagaré al portador o la orden, la Sección 2-109 de la Ley de Transacciones Comerciales, *supra,* establece que una promesa u orden es pagadera al portador si:

(1) especifica que es pagadera al portador o a la orden del portador o de otra forma indica que la persona en posesión de la promesa u orden tiene derecho al pago;

(2) no designa un tomador;

(3) especifica que es pagadera a, o a la orden de, efectivo ("cash") o de otra forma indica que no es pagadera a una persona identificada. 19 LPRA sec. 509.

En cambio, la referida sección preceptúa que una promesa que no es pagadera al portador entonces es pagadera a la orden cuando sea: (i) a la

orden de una persona identificada, o (ii) a una persona identificada o a su orden.

Por último, la mencionada disposición legal establece que un instrumento pagadero al portador puede convertirse en pagadero a una persona identificada si el mismo recibe un endoso especial de acuerdo con lo dispuesto en la Sección 2-205(a). 19 LPRA sec. 509. Además, un instrumento pagadero a una persona identificada puede convertirse en pagadero al portador si el mismo es endosado en blanco de acuerdo con lo dispuesto en la Sección 2-205(b). 19 LPRA sec. 509.

Esta normativa resulta consistente con el Artículo 92 de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Ley Núm. 210 de 8 de diciembre de 2015, 30 PRA sec. 6119, según enmendada. El referido artículo regula lo atinente a los instrumentos negociables pagaderos al portador o a la orden:

> En las escrituras de constitución de hipoteca en garantía de instrumentos pagaderos al portador se hará constar expresamente que la hipoteca queda constituida a favor de la persona con derecho a exigir el cumplimiento del instrumento.
>
> En las escrituras de constitución de hipoteca en garantía de instrumentos negociables pagaderos a la orden, se hará constar expresamente que la hipoteca queda constituida a favor de la persona o personas a cuya orden es pagadero el instrumento o la persona que en el futuro tenga derecho a exigir el cumplimiento del instrumento. En estas escrituras, no será necesaria la comparecencia de la persona natural o jurídica a la orden de quien sean pagaderos tales instrumentos. Tampoco le será aplicable a estas hipotecas lo dispuesto en el Artículo 83 de esta Ley.
>
> En los casos de hipoteca en garantía de varios instrumentos negociables deberá hacerse constar además el número y valor de cada uno de los instrumentos así como sus respectivas fechas de vencimiento. 30 PRA sec. 6119.

De conformidad con esta norma, el Artículo 91 de la precitada ley dispone que "cuando una hipoteca se constituya para garantizar instrumentos negociables o títulos transferibles por endoso o al portador, el derecho hipotecario se entenderá transferido con el instrumento, sin necesidad de dar conocimiento de ello al deudor, ni de hacerse constar la transferencia en el Registro. *DLJ Mortgage Capital, Inc. v. Santiago Martínez*, 202 DPR 950, 962 (2019). Este tipo de transferencia es permisible, pues "la

negociabilidad es la característica medular de los instrumentos negociables y la fuente de su importancia para nuestras relaciones económicas". *Des. Caribe v. Ven-Lour Enterprises, supra*, pág. 298.

### F. Ejecución de hipoteca

Ante el incumplimiento de una obligación asegurada por un pagaré hipotecario, el acreedor puede instar una demanda en cobro de dinero y ejecución de hipoteca. Es decir, "puede optar por tratar de obtener la satisfacción de la sentencia que sea dictada en reconocimiento de su crédito mediante requerimiento personal al deudor o mediante la ejecución de la garantía hipotecaria". *First Fed. Savs. v. Nazario et als.*, 138 DPR 872, 880 (1995). Este proceder es una reclamación mixta por constituir una causa de acción de naturaleza personal y real. Íd., pág. 879. *CRUV v. Torres Pérez*, 111 DPR 698, 699 (1981).

En aquellos escenarios en que el deudor y el propietario sean las mismas personas, la acción personal queda inmersa en el reclamo de ejecución de hipoteca. *First Fed. Savs. v. Nazario et als., supra*, pág. 880. Adviértase que el acreedor demandante "no tiene derecho a un remedio adicional e independiente de su derecho a obtener el pago de la deuda reclamada". En tal caso, la causa de acción está limitada a obtener mediante la ejecución de hipoteca "la condena al pago del crédito reclamado". Íd.

A su vez, es menester destacar que, la lógica jurídica de este procedimiento exige la existencia de una deuda líquida, exigible y vencida. La característica de *líquida* alude a una cuantía de dinero debida, cierta y determinada de la cual no existe controversia. *Ramos y Otros v. Colon y Otros*, 153 DPR 534, 546 (2001). Además, tal cuantía debe ser *exigible*, lo que significa que puede demandarse su cumplimiento. *Río Mar Community Association, Inc. v. Mayol Bianchi*, 208 DPR 100, 109 (2021).

### B. Acción judicial en torno al pagaré extraviado

Nuestro derecho registral inmobiliario provee un trámite judicial para la atención de un pagaré extraviado. A tales fines, el Artículo 122 de Ley del Registro de la Propiedad Inmobiliaria, *supra,* dispone que:

Si todos o algunos de los instrumentos negociables se extraviaron o fueron destruidos, únicamente podrán cancelarse dichas inscripciones mediante la presentación de la sentencia final y firme debidamente certificada en la que se declaren extinguidas las obligaciones representadas por los referidos instrumentos.

Por su parte, la Regla 92.4 del Reglamento General para la Ejecución de la Ley del Registro de la Propiedad Inmobiliaria, Reglamento Núm. 8814 de 14 de septiembre de 2016, instaura el proceso aplicable a tales escenarios:

En caso de extravío o destrucción del instrumento negociable sin que se hayan extinguido las obligaciones representadas, se llevará el procedimiento según lo dispuesto en la Regla 122.1 de este Reglamento. Probados los hechos alegados, la sentencia o resolución que emita el Tribunal dispondrá para el otorgamiento del instrumento negociable sustituto. Bajo ninguna circunstancia se aceptará una copia del instrumento negociable extraviado como instrumento sustituto.

Para tomar razón en el Registro de la sustitución, será necesario la presentación de la copia certificada de la escritura de sustitución de instrumento negociable en la cual el notario relacionará la sentencia, resolución u orden emitida por el Tribunal y certificará bajo su fe notarial que los tuvo ante sí. En la escritura de sustitución deberá comparecer el acreedor y el o los deudores. De no estar disponibles los deudores, comparecerá el Alguacil según lo ordene el Tribunal. Con la escritura se deberá acompañar copia del instrumento negociable sustituto. No será necesario acompañar los documentos judiciales como complementarios. El Registro consignará el nuevo número de testimonio o affidavit y sólo se pagarán los derechos correspondientes a una nota marginal sin cuantía.

A tales efectos, la Regla 122.1 del Reglamento Hipotecario, *supra,* incorpora el proceso de notificación correspondiente a la causa de acción en torno al instrumento negociable extraviado:

Cuando se haya extraviado el instrumento negociable garantizado con hipoteca o alguno de ellos, de ser varios, se instará acción judicial contra el último poseedor conocido de los instrumentos extraviados, y cualquier poseedor desconocido. Cuando el último acreedor conocido es una persona distinta a la que surge del Registro, también se deberá demandar y emplazar a éste. El Tribunal ordenará la publicación de edictos con arreglo a las normas de procedimiento civil vigentes. El edicto deberá contener el número de finca y sus datos registrales, datos de la escritura mediante la cual se constituyó la hipoteca y datos del instrumento negociable extraviado incluyendo el principal y el número de testimonio en virtud del cual quedó notarizado.

Deberá alegarse y probarse que el crédito fue satisfecho y que los instrumentos se extraviaron. Si éstos nunca salieron de manos del deudor, se probará este hecho a satisfacción del Tribunal, iniciándose en este caso la acción judicial sólo contra personas desconocidas posibles poseedoras de los títulos extraviados.

En *Popular Mortgage, Inc. v. Hon. Ariel Colón Clavell*, 181 DPR 625, 641 (2011), el Tribunal Supremo de Puerto Rico emitió su interpretación jurisprudencial sobre el procedimiento reglamentario discutido. En lo pertinente, expuso que cuando un tercero inste una causa de acción sobre un pagaré hipotecario extraviado le corresponde notificar al deudor si este es el último poseedor conocido:

> Cuando un tercero pretenda cancelar una hipoteca en garantía de un pagaré extraviado y se alegue que el último poseedor conocido fue el deudor, se deberá instar una acción judicial contra ese último poseedor conocido y cualquier poseedor desconocido del pagaré extraviado. Además, se deberá demandar y emplazar al último acreedor conocido de las obligaciones representadas por el pagaré. Ahora bien, si el último acreedor conocido es una persona distinta al acreedor que consta en el Registro de la Propiedad, se deberá notificar también a este último. El tribunal de instancia deberá comprobar que el pagaré se extravió en manos del alegado último poseedor conocido. Íd.

Nótese que el proceso descrito inicia con la presentación de una demanda contra el último tenedor conocido del instrumento, por lo que, se tendrá que diligenciar un emplazamiento personal al último poseedor que obre del Registro, y además, publicar un edicto contra cualquier potencial poseedor desconocido del instrumento. A. C. Gómez Pérez y L. I. Quintana Llorens, *La hipoteca en el derecho inmobiliario registral puertorriqueño*, Bogotá, Ed. Temis, 2021, pág. 285. De tal modo, el tribunal se asegura que la garantía del titular de la hipoteca no sea cancelada sin su consentimiento. *Popular Mortgage, Inc. v. Hon. Ariel Colón Clavell, supra,* pág. 641.

**III.**

En el presente recurso, Condado alega que el 16 de marzo de 2018 instó una causa de acción sobre sustitución de pagaré extraviado. Sostiene que en ese proceso judicial solo notificó a FirstBank y Island Holding por ser las entidades acreedoras de acuerdo con las constancias registrales. Puntualiza que no notificó a la parte deudora, pues no era tenedora del pagaré extraviado. Así especificado, asevera que el 17 de julio de 2018, el Tribunal de Primera Instancia emitió una *Sentencia,* que advino final y firme, en la cual ordenó la sustitución del pagaré extraviado. Sostiene que dicho pagaré está endosado a su favor, y a su vez, consta inscrito en el Registro de

la Propiedad. A la luz de lo anterior, argumenta que los codemandados incumplieron con la obligación personal asegurada mediante la constitución de una hipoteca. Reitera que tal incumplimiento ha generado una deuda líquida, vencida y exigible. Por consiguiente, solicita que este foro intermedio apelativo revoque el dictamen recurrido, y en su consecuencia, dicte sentencia sumaria a su favor ante la inexistencia de hechos materiales en controversias.

Por su parte, los demandados-recurridos advierten que existen hechos en controversia que impiden acoger la vía sumaria solicitada. En específico, alegan que están controvertidos los siguientes elementos fácticos: (1) el endoso del pagaré hipotecario en cuanto a un planteamiento de nulidad o invalidez, (2) la pérdida de dicho pagaré, (3) la legitimación de Condado para instar la reclamación de sustitución del pagaré, (4) los cómputos en balance de cancelación de pagaré, y (4) la falta de buena fe atribuida a la entidad demandante, entre otros. Por tanto, peticionan que este Tribunal deniegue la expedición del *certiorari*, y en efecto, el TPI resuelva las controversias identificadas mediante la presentación de la prueba correspondiente.

Evaluado sosegadamente el expediente ante nuestra consideración, así como el marco legal reseñado, no identificamos las condiciones jurídicas que nos permitan intervenir en el dictamen recurrido en esta etapa interlocutoria. A pesar de que la Regla 52.1 de Procedimiento Civil, *supra*, nos faculta a examinar las determinaciones denegatorias de mociones dispositivas, no encontramos los elementos que nos motiven a activar nuestro ejercicio revisor al amparo de tal disposición.

Recordemos, también, que nuestro ordenamiento jurídico nos concede la facultad para intervenir judicialmente en aquellas instancias interlocutorias en las cuales medie una actuación arbitraria o caprichosa, un ejercicio de craso abuso de discreción, o una errónea interpretación o aplicación del derecho. Sin embargo, no contemplamos tales escenarios en el recurso atendido de acuerdo con los parámetros orientativos de la Regla

40 del Tribunal de Apelaciones, *supra*. En vista de ello, denegamos la expedición el auto de *certiorari*.

Por último, advertimos que este dictamen apelativo no prejuzga los méritos del caso, ni impide que una vez se dicte sentencia final, la parte afectada presente el recurso apelativo correspondiente. Véase *Torres Martínez v. Torres Ghigliotty*, *supra*, págs. 98-99.

**IV.**

Por los fundamentos que anteceden, *denegamos* la expedición del auto de *certiorari*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones