ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO<br><br>Apelante<br><br>v.<br><br>METRO PACK CARIBE INC.; ANÍBAL VARGAS MALDONADO; ROLANDO VARGAS MALDONADO; WANDA IVELISSE VARGAS MALDONADO; SUCESIÓN MARÍA SOTERA MALDONADO SEPÚLVEDA t/c/c MARÍA MALDONADO compuesta por sus herederos: ANÍBAL VARGAS MALDONADO; ROLANDO VARGAS MALDONADO; WANDA IVELISSE VARGAS MALDONADO; "JOHN DOE" y "JANE DOE", estos últimos como posibles miembros de la Sucesión, cuyos nombres se desconocen; DEPARTAMENTO/SECRETARIO DE HACIENDA; CENTRO DE RECAUDACIÓN DE INGRESOS MUNICIPALES "C.R.I.M."; ADMINISTRACIÓN PARA EL SUSTENTO DE MENORES; y X, Y, Z<br><br>Apelados | KLAN202400966 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Civil Núm.: PO2022CV03468<br><br>Sobre: Ejecución de hipoteca |

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Salgado Schwarz y el juez Monge Gómez

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico a 5 de febrero de 2025.

Comparece el Banco Popular de Puerto Rico, en adelante BPPR o el apelante, y solicita que revoquemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de Ponce, en adelante TPI. Mediante la misma, se declaró ha lugar la solicitud de sentencia sumaria interpuesta por, Aníbal, Rolando y Wanda, todos de apellidos Vargas Maldonado, en adelante los

apelados. En consecuencia, se declaró no ha lugar la solicitud de sentencia sumaria interpuesta por el apelante y se dictó *Sentencia* declarando no ha lugar la *Demanda* sobre ejecución de hipoteca.

Por los fundamentos que expondremos a continuación, se revoca la *Sentencia* apelada y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de forma consistente con la presente *Sentencia*.

**-I-**

Surge de los documentos que obran en autos, que BPPR presentó una *Demanda* sobre ejecución de hipoteca *in rem* contra los apelados.[1] Adujo que otorgó un préstamo a Metro Pack por la suma de $50,000.00, evidenciado mediante *Anejo al Contrato de FlexiCuenta de Negocios* número 101-2542560-8801. Arguyó que posteriormente el apelado suscribió un *Contrato de Préstamo a Plazos* con Westernbank y un *Acuerdo de Gravamen Mobiliario y Garantía Continua*. Alegó que en el primero se pactó "que la suma del… préstamo debía utilizarse, entre otras cosas, para cancelar la línea de crédito otorgada a favor de BPPR". Mientras en el acuerdo de gravamen, Metro Pack "entregó en carácter prendario al BPPR, el pagaré hipotecario… el cual a su vez quedó garantizado por hipoteca" sobre la finca #25311.

En opinión del apelante, como poseedor y tenedor de buena fe del pagaré garantizado con la hipoteca, puede ejecutar dicho pagaré ante el incumplimiento o falta de pago del apelado de la línea de crédito otorgada por BPPR, aunque Metro Pack haya cancelado su

---

[1] Apéndice del apelante, págs. 1-45.

deuda prestataria con Westernbank. Así pues, coligió que la deuda vencida, no satisfecha, líquida y exigible amerita la ejecución de la hipoteca, conforme a lo pactado en el acuerdo de gravamen.

Por su parte, los apelados presentaron una *Moción Solicitando se Dicte Sentencia Sumaria*.[2] En síntesis, adujeron que la ejecución de la hipoteca no procede en derecho porque se satisfizo la obligación principal que generó la constitución de la garantía hipotecaria y, por lo tanto, se extinguió el gravamen hipotecario. Específicamente, sostuvieron, que la línea de crédito a favor de BPPR se saldó porque Metro Pack y Westernbank "acordaron que del producto del préstamo se cancelaría la referida línea de crédito". A su entender, la garantía hipotecaria se constituyó a favor de Westernbank y no de BPPR. Así pues, solicitó como remedio la devolución del pagaré por $84,000.00 para la cancelación correspondiente.

En desacuerdo, el BPPR presentó una *Oposición a "Moción Solicitando se Dicte Sentencia Sumaria" y Petición de Sentencia Sumaria a Favor del Demandante*.[3] Arguyó que Metro Pack, en contravención a lo pactado en el contrato de préstamo con Westernbank, no destinó parte de la suma aprobada para satisfacer la facilidad del crédito que recibió del apelante. Afirmó, que contrario a la alegación de los apelados sobre la cancelación de la deuda con BPPR, de la moción de sentencia sumaria no surge evidencia alguna que sustente la cancelación. De modo, que la cancelación de la deuda prestataria con Westernbank no tuvo el

---

[2] *Id.*, págs. 117-143.
[3] *Id.*, págs. 160-189.

efecto de cancelar la línea de crédito porque la obligación a favor del apelante "fue garantizada con hipoteca en garantía de pagaré a la orden de BPPR".

Posteriormente, los apelados presentaron una *Moción Suplementando y Reiterando Solicitud para que se Dicte Sentencia Sumaria a Favor de la Parte Demandada y Oposición a Solicitud de Sentencia Sumaria de la Parte Demandante*. Mediante la misma, reiteraron las alegaciones expuestas en su solicitud de sentencia sumaria.[4]

El apelante presentó una *Moción para Suplementar y Reiterar Petición de Sentencia Sumaria a Favor de BPPR*.[5] En dicho escrito, además, destacó que el señor Vargas admitió que carecía de prueba para establecer el pago de la deuda reclamada. Sostuvo, a su vez, que admitió en el procedimiento de quiebra, bajo pena de perjurio, que ni el préstamo con BPPR por $50,000.00 ni el de Westernbank habían sido satisfechos. Finalmente, reiteró que el *Acuerdo de Gravamen Mobiliario* "dispone, en lo aquí pertinente, que el incumplimiento de la parte deudora de cualesquiera de las obligaciones o responsabilidades contraídas en el contrato de préstamo, faculta al Banco a proceder con la ejecución del gravamen mobiliario sobre la garantía colateral o cualquier sustitución de la misma o en adición a ella".

Con el beneficio de la comparecencia de las partes, el TPI dictó una *Sentencia* en la que declaró ha lugar la solicitud de sentencia sumaria de los apelados y declaró no ha lugar la solicitud de

---

[4] *Id.*, págs. 224-230.
[5] *Id.*, págs. 233-288.

sentencia sumaria interpuesta por BPPR.[6] En consecuencia, dictó *Sentencia* declarando no ha lugar la *Demanda* sobre ejecución de hipoteca. En lo aquí pertinente dispuso:

> En este caso, la hipoteca inscrita en el Registro de la Propiedad sobre la finca número 25,311 fue constituida, con el consentimiento de los dueños registrales Aníbal Vargas Maldonado, Rolando Vargas Maldonado, Wanda Ivelisse Vargas Maldonado y de la fenecida María Sotera Maldonado Sepúlveda t/c/c María Maldonado, con el fin de garantizar la obligación principal contraída por Metro Pack Caribe, Inc. a través del Contrato de Préstamo a Plazos por la cantidad de $250,000.00. Por otro lado, de la Certificación Registral no consta que la Finca Núm. 25,311 fuese hipotecada con el fin de garantizar la Flexicuenta de negocios Núm. 019-27223-5 adquirida por Metro Pack Caribe Inc. por la cantidad de $50,000.00. Por lo tanto, ante la falta de inscripción de una hipoteca sobre la propiedad objeto de este pleito en garantía de la alegada deuda reclamada por la parte demandante, la propiedad no puede ser ejecutada con el fin de pagar la alegada deuda.[7]

Insatisfecho, BPPR presentó un *Recurso de Apelación* en el que alega que el TPI incurrió en los siguientes errores:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EN LA APLICACIÓN DEL DERECHO AL DESCARTAR LA LEY DE TRANSACCIONES COMERCIALES DE PUERTO RICO, Y DISPONER DE LA CONTROVERSIA SUMARIAMENTE, EXCLUSIVAMENTE A BASE DE LA LEY DEL REGISTRO DE LA PROPIEDAD INMOBILIARIA, LO QUE LLEVÓ A DESESTIMAR ERRÓNEAMENTE LA DEMANDA DE EJECUCIÓN DE HIPOTECA *IN REM*, PRESENTADA POR EL APELANTE.
>
> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA SUMARIA A FAVOR DE LA PARTE APELADA, DESESTIMANDO LA DEMANDA EN SU TOTALIDAD, CUANDO EXISTEN CONTROVERSIAS SOBRE HECHOS MATERIALES Y ESENCIALES, QUE REQUIEREN UN JUICIO PLENARIO, LOS CUALES PRECISAMENTE LLEVARON AL TRIBUNAL DE PRIMERA INSTANCIA, A DENEGAR LA SUMARIA INICIALMENTE.

Examinados los escritos de las partes, el expediente y la prueba documental, estamos en posición de resolver.

---

[6] *Id.*, págs. 239-354.
[7] *Id.*, pág. 353.

## -II-

### A.

En nuestro ordenamiento jurídico el mecanismo de sentencia sumaria procura, ante todo, aligerar la tramitación de aquellos casos en los cuales no existe una controversia de hechos real y sustancial que exija la celebración de un juicio en su fondo.[8] Así pues, para adjudicar en los méritos una controversia de forma sumaria, es necesario que de las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas y de cualquier otra evidencia ofrecida, surja que no existe controversia real y sustancial en cuanto a algún hecho material y que, como cuestión de derecho, procede dictar sentencia sumaria a favor de la parte promovente.[9]

En *Meléndez González et al. v. M. Cuebas,* el Tribunal Supremo de Puerto Rico, en adelante TSPR, estableció el estándar específico que debe utilizar el Tribunal de Apelaciones para revisar una sentencia sumaria, a saber:

> **Primero**, reafirmamos lo que establecimos en *Vera v. Dr. Bravo*, *supra*, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, … y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor

---

[8] *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010 (2020); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018).
[9] *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019); *González Santiago v. Baxter Healthcare*, 202 DPR 281 (2019); *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224-225 (2015).

de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.

**Segundo**, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil … y discutidos en *SLG Zapata-Rivera v. JF Montalvo*….

**Tercero**, en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

**Cuarto**, y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[10]

### B.

Los contratos constituyen una de las fuentes de las obligaciones en el ordenamiento jurídico puertorriqueño.[11] En el ámbito del derecho contractual rige el principio de libertad de contratación, según el cual los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, a la moral, ni al orden público.[12]

Una vez las partes acuerdan esos pactos, cláusulas y condiciones mediante un contrato, están

---

[10] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118-119, 122 (2015). (Énfasis en el original) (citas omitidas).
[11] Debido a que el contrato en controversia se suscribió previo a la aprobación del Código Civil de 2020, el presente trámite apelativo está regulado por el Código Civil de 1930. Art. 1042 del Código Civil, 31 LPRA sec. 2992.
[12] Art. 1207 del Código Civil, 31 LPRA sec. 3372.

obligadas a cumplir con los mismos.[13] Esto es así porque "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos".[14] Este principio conocido como *pacta sunt servanda* impone a las partes contratantes la exigencia de cumplir con lo pactado pues supone la inalterabilidad de los acuerdos contenidos en el contrato.[15] De modo, que los contratos se perfeccionan por el mero consentimiento y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley.[16]

### C.

El Código Civil de 1930[17] define el contrato de préstamo en los siguientes términos:

> Por el contrato de préstamo, una de las partes entrega a la otra, o alguna cosa no fungible para que use de ella por cierto tiempo y se la devuelva, en cuyo caso se llama comodato, o dinero u otra cosa fungible, con condición de volver [*sic*.] otro tanto de la misma especie y calidad, en cuyo caso conserva simplemente el nombre de préstamo…
>
> El simple préstamo puede ser gratuito o con pacto de pagar interés.[18]

Por su parte, el TSPR ha definido el contrato de préstamo como:

> […] unilateral, por cuanto sólo produce obligaciones para una de las partes, que es el prestatario; traslativo de dominio, en el sentido de que con la entrega de la posesión, se entrega también su título, ya que el prestatario recibe la cosa para gastarla, estando éste obligado a devolver el género y; gratuito u oneroso, según se hayan pactado el pago de intereses o no.
>
> Toda vez que el contrato de préstamo es uno unilateral, por generar obligaciones a cargo del

---

[13] *Rodríguez García v. UCA, supra, pág.* 943.
[14] Art. 1044 del Código Civil, 31 LPRA Sec. 2994.
[15] *Rodríguez García v. UCA, supra.*
[16] Art. 1210 del Código Civil, 31 LPRA sec. 3375.
[17] Véase, nota al calce número 30.
[18] 31 LPRA sec. 4511. (Derogado).

prestatario, éste estará obligado a entregar lo prestado –con sus intereses si se pactaron– una vez el término haya vencido.[19]

Finalmente, y en lo aquí pertinente, en el caso de una reclamación de cobro, "[e]l demandante s[o]lo tiene que probar que existe una deuda válida, que la misma no se ha pagado, que él es el acreedor y los demandados sus deudores".[20]

**D.**

La *Ley de Transacciones Comerciales*, en adelante Ley Núm. 208-1995, es una legislación especializada que reglamenta los instrumentos negociables, los depósitos y cobros bancarios, así como las transferencias de fondos. Este ordenamiento se promulgó con el propósito de simplificar, clarificar y modernizar el Derecho que rige las transacciones comerciales, incluir las mejores prácticas y el Derecho utilizado en diversas jurisdicciones y permitir la continua expansión de las prácticas comerciales.[21]

Específicamente, la Sección 2-104 (a) de la Ley Núm. 208-1995, define el "instrumento negociable" como una promesa o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden, si el mismo:

    (1) Es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor;

    (2) es pagadero a la presentación o en una fecha específica; y

---

[19] *Torres, Torres v. Torres et al*, 179 DPR 481, 492 (2010). (Citas omitidas).
[20] *General Electric v. Concessionaires, Inc*. 118 DPR 32, 43 (1986).
[21] Sección 1-102 de la Ley de Transacciones Comerciales, Ley Núm. 208-1995, 19 LPRA sec. 401.

> (3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero, **pero la promesa u orden puede contener (i) un compromiso o poder para dar, mantener o proteger colateral para garantizar el pago, (ii) una autorización o poder al tenedor para admitir sentencia o liquidar la colateral o disponer de ella de otra forma**, o (iii) una renuncia al beneficio de cualquier ley que exista concediéndole una ventaja o protección a un deudor.[22]

Ahora bien, está claramente establecido que un instrumento negociable, es decir, una promesa de pago, "puede contener un compromiso adicional de dar colateral para garantizar el pago sin que esto afecte la negociabilidad del instrumento".[23] Por tal razón, un pagaré garantizado por una hipoteca de bien inmueble es un instrumento negociable "porque el compromiso de ofrecer como colateral la hipoteca para garantizar el pago no afecta su negociabilidad".[24]

¿Qué ocurre si el tenedor de un pagaré hipotecario garantizado por un bien inmueble lo negocia válidamente? Sencillamente, "la hipoteca queda automáticamente transferida al nuevo tenedor".[25] En otras palabras, 'security follows the debt'.[26] Esta norma ha sido incorporada en nuestro ordenamiento registral, ya que al amparo del Art. 195 de la *Ley Hipotecaria y del Registro de la Propiedad* de 1979, vigente al momento en que se perfeccionó la garantía hipotecaria en controversia, cuando se constituye una hipoteca para garantizar un título transferible por

---

[22] 19 LPRA sec. 504. (Énfasis suplido).
[23] 19 LPRA sec. 504(a)(3)(A).
[24] *Desarrolladora Caribe v. Ven-Lour Enterprises, Inc.*, 198 DPR 290, 299 (2017).
[25] *Id.,* pág. 300.
[26] *Id.,* pág. 307 (citando a D.J. Whaley, *Mortgage Foreclosures, Promissory Notes, and the Uniform Commercial Code*, 3 W. St. U.L. Rev. 313, 326 (2012)). "Cuando el tenedor de un pagaré hipotecario negocia el instrumento válidamente, la hipoteca queda automáticamente transferida al nuevo tenedor" (A. C. Gómez Pérez *et al.*, *La hipoteca en el derecho inmobiliario registral puertorriqueño*, Bogotá, Nomos S. A., 2021, pág. 176).

endoso o al portador, "*el derecho hipotecario se entenderá transferido* [...] *sin necesidad de dar de ello conocimiento al deudor*".[27]

En lo aquí pertinente, procede destacar que se puede constituir un gravamen mobiliario simplemente con la posesión del bien gravado. De modo, que la posesión del pagaré configura un gravamen mobiliario que tiene efectos frente a terceros.[28] Consecuentemente, tenemos que coincidir con el TSPR a los efectos de que "la constitución de una garantía mobiliaria sobre un pagaré que a su vez está garantizado por un gravamen sobre propiedad inmueble, también incluye los derechos a ese gravamen sobre propiedad inmueble".[29]

**-III-**

Para BPPR erró el TPI al desestimar sumariamente la *Demanda* basando su determinación exclusivamente en la *Ley del Registro de la Propiedad Inmobiliaria* y no considerar las disposiciones aplicables de la *Ley de Transacciones Comerciales*. En consecuencia, el foro recurrido omitió señalar que, en virtud del contrato de préstamo, BPPR, como antecesor en derecho de Westernbank, advino a la condición de tenedor del pagaré de $84,000, garantizado por una hipoteca sobre la finca #25311, con capacidad para ejecutar dicho pagaré sobre esta última. A esto hay que añadir, que incidió el foro apelado al desestimar sumariamente la *Demanda* cuando existen hechos materiales en controversia.

---

[27] *Desarrolladora Caribe v. Ven-Lour Enterprises, Inc.*, *supra*, pág. 301.
[28] Sec. 9-203 de la Ley Núm. 208-1995 (19 LPRA sec. 2233 *et seq*.).
[29] *Desarrolladora Caribe v. Ven-Lour Enterprises, Inc.*, *supra*, pág. 308.

En cambio, los apelados alegan que BPPR pretende vincular dos transacciones completamente distintas, a saber: una línea de crédito con el apelante por $50,000.00, sin colateral, con un préstamo comercial otorgado por Westernbank por la suma de $250,000.00, con una garantía hipotecaria sobre la finca #25311. A su entender, la situación jurídica entre las partes es muy diferente. Como los apelados saldaron el préstamo comercial con garantía hipotecaria, esta última se extinguió. Por tal razón, el apelante no puede ejecutar la garantía hipotecaria como repago de la obligación representada por la línea de crédito que carecía de colateral.

Para resolver la controversia ante nuestra consideración hay que contestar el siguiente interrogante: ¿Procede ejecutar la garantía mobiliaria y la hipoteca sobre bien inmueble subyacente, como consecuencia del impago de la línea de crédito por la suma de $50,000.00, otorgada por BPPR? Contestamos en la afirmativa. Veamos.

El 27 de marzo de 2007, Westernbank y la parte apelada suscribieron un *Acuerdo de Gravamen Mobiliario y Garantía Continua*, conforme a la Ley Núm. 208-1995.[30] En virtud de este contrato, se constituyó un gravamen mobiliario por la totalidad de las obligaciones y responsabilidades contraídas por los apelados.[31]

Este gravamen mobiliario está representado por un pagaré hipotecario, a la orden de WESTERNBANK PUERTO RICO, por la suma principal de $84,000.00, con vencimiento a la presentación, el cual, a su vez, está

---

[30] Apéndice del apelante, págs. 19-23.
[31] *Id*, pág. 19.

garantizado con una hipoteca de bien inmueble constituida por la escritura número 133 de fecha 27 de marzo de 2007 ante el Notario Juan Manuel Casanova Rivera, que grava la finca #25311.[32] Además, el instrumento negociable en cuestión está autenticado por el afidávit #3,948 del mismo Notario y en igual fecha.[33]

El acuerdo dispuso, además, que el "gravamen continuará vigente sobre la Garantía Colateral no obstante que la misma se venda o de cualquier forma se traspase y enajene o grave y también continuará vigente respecto a cualquier producto del mismo, incluyendo cualquier cobro recibido sobre la Garantía Colateral por la parte DEUDORA".[34]

Cónsono con lo anterior, las partes facultaron a Westernbank a "traspasar el pagaré o pagarés y/o los instrumentos o documentos que representen las obligaciones de la parte DEUDORA para con el BANCO, y **podrá, además, transferir el presente gravamen mobiliario en todo o en parte al cesionario o cesionarios, quienes quedarán investidos de todos los poderes y derechos arriba conferidos al BANCO**".[35]

Dada la particularidad de que el gravamen mobiliario tiene una garantía hipotecaria sobre un bien inmueble, la cesión del primero conlleva la transferencia del segundo. De modo, que "[e]l tenedor de este pagaré tendrá el beneficio de todas las

---

[32] *Id*., pág. 26. "La finca #25311… consta inscrita al folio 133 del tomo 936 de Ponce, Registro de la Propiedad de Puerto Rico, Sección Primera de Ponce".
[33] *Id*, pág. 22. (Énfasis en el original).
[34] *Id*., pág. 20.
[35] *Id*, pág. 21. (Énfasis suplido).

condiciones y disposiciones de dicha escritura [número 133 de 27 de marzo de 2007]".[36]

Recapitulando: al Westernbank ceder el pagaré a BPPR se perfeccionó la garantía mobiliaria inherente a aquel y en la medida que este no está sujeto a ninguna condición, se torna eficaz la orden o promesa incondicional de pago. En otras palabras, el BPPR, como cesionario, puede reclamar el pago de la obligación representada por el instrumento negociable.

Lo anterior significa, que al tornarse eficaz la orden o promesa de pago representada por el pagaré, se activa, a su vez, la eficacia colateral de la garantía inmobiliaria que respaldaba el cumplimiento de la obligación representada por el primero. O lo que es lo mismo, BPPR tiene una obligación doblemente garantizada, a saber: por el instrumento negociable y por la garantía inmobiliaria que le sirve de colateral ("security follows de debt"). Por tal razón, BPPR puede ejecutar la garantía inmobiliaria que representa el pagaré de $84,000.00, en cumplimiento de la deuda impagada por concepto de la línea de crédito.[37]

Establecido lo anterior, y conforme al itinerario anunciado, la adjudicación de la presente controversia conlleva, además, contestar la siguiente pregunta: ¿procede declarar con lugar la *Oposición a "Moción Solicitando se Dicte Sentencia Sumaria" y Petición de Sentencia Sumaria a Favor del Demandante*? No. Nos explicamos.

Luego de revisar las mociones de sentencia sumaria de ambas partes y los documentos que las

---

[36] *Id*, pág. 24.
[37] *Id*, pág. 13.

acompañan encontramos que existe una controversia sobre un hecho esencial que impide resolver el pleito de epígrafe mediante sentencia sumaria, a saber: si se pagó la línea de crédito por la suma de $50,000.00.

En carta de 30 de enero de 2022, la representante de BPPR afirma que la deuda en cuestión no se había pagado.[38] Además, en el *Schedule F- Creditors Holding Unsecured Nonpriority Claims,* uno de los apelados admitió que esa deuda estaba insoluta.[39]

Como si lo anterior fuera poco, los apelados admitieron que no tienen prueba de haber pagado la deuda por concepto de la FlexiCuenta de BPPR.[40]

Debido a que concluimos que existe una controversia sobre un hecho esencial que impide adjudicar el pleito de epígrafe por la vía sumaria, procede poner en vigor el mandato de la Regla 36.4 de Procedimiento Civil, *supra*. Cónsono con lo anterior, determinamos que los hechos 1, 2, 3, 4, 6, 7, 8, 9, 15, 16, 17 y 18 de la *Sentencia* revocada no están en controversia.

Finalmente, el descargo de las obligaciones de alguna de las partes como resultado del procedimiento de quiebra es inconsecuente para la adjudicación de la controversia ante nuestra consideración. Esto es así,

---

[38] *Id*, pág. 42.
[39] *Id*, pág. 273.
[40] En su *Moción Solicitando se Dicte Sentencia Sumaria*, el apelado afirma: "Cuando posteriormente, el 27 de marzo de 2007, el WESTERNBANK PUERTO RICO, le concede el préstamo comercial a METRO PACK, ambas partes acordaron que del producto del préstamo se cancelaria [*sic*.] la referida línea de crédito del BPPR (cuenta # 019-27223-5 del 21 de septiembre del 2005) por la suma de $50,000.00. Por tanto, en ese momento la deuda por la línea de crédito se saldó, aunque dicha FlexiCuenta de Negocios continuó abierta". *Id.*, pág. 123. En cambio, en su *Moción para Suplementar y Reiterar Petición de Sentencia Sumaria a Favor de BPPR*, la parte apelante alega lo siguiente: "la parte demandada cándidamente admitió, durante la vista celebrada el pasado 6 de julio de 2023, **que no cuenta con prueba alguna**, para evidenciar el pago de la deuda en cuestión". *Id.*, pág. 236. (Énfasis en el original).

porque como el trámite de ejecución de hipoteca es *in rem*, BPPR puede solicitar la ejecución de la finca #25311 independientemente de quién sea su titular o de que terceros puedan verse afectados.[41]

**-IV-**

Por los fundamentos previamente expuestos, se revoca la *Sentencia* apelada. En consecuencia, se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de forma consistentes con las determinaciones de la presente *Sentencia*.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[41] A.C. Gómez Pérez, L.I. Quintana Lloréns, *op. cit.*, págs. 43-44.